**REED TOOL COMPANY, Petitioner,**

v.

**Judy A. COPELIN, Respondent.**

No. C–3591.

Supreme Court of Texas.

April 10, 1985.

Rehearing Denied May 8, 1985.

Fulbright and Jaworski, Patricia J. Kerrigan, Winstol D. Carter, Jr. and Charles W. Hurd, III, Houston, for petitioner.

R.D. McPherson, Houston, for respondent.

SPEARS, Justice.

The question presented is whether an employer who intentionally maintains an unsafe workplace in which an employee is injured may be held to have intentionally injured the employee. Mrs. Judy Copelin sued Reed Tool Company for loss of consortium resulting from on-the-job injuries sustained by her husband. The trial court granted summary judgment for Reed Tool Company on the ground that Mrs. Copelin's action was derivative and could not be maintained because her husband's suit was barred by the Workers' Compensation Act. Tex.Rev.Civ.Stat.Ann. arts. 8306–8309i (Vernon 1967 and Supp.1985). This court has held that if Mrs. Copelin could establish an intentional impairment of consortium, her claim would not be barred by either the act or her husband's acceptance of workers' compensation benefits. *Reed Tool Co. v. Copelin*, 610 S.W.2d 736 (Tex. 1980) affirming 596 S.W.2d 302 (Tex.Civ. App.1980). On remand Reed Tool again moved for summary judgment, asserting that there was no genuine issue of material fact concerning intentional injury. The trial court granted summary judgment. The court of appeals reversed and remanded the cause for trial. 679 S.W.2d 605. We reverse the judgment of the court of appeals and affirm the trial court judgment.

George Copelin, a machine operator for Reed Tool, was injured in the course of his employment when a chain tong from the lathe he was operating hit him in the head. He suffered severe brain damage and was left in a coma. Mrs. Copelin alleged that Reed Tool intentionally caused her husband's injury by intentionally requiring him to work a machine that Reed Tool knew was unsafe, did not meet minimal safety standards, and was defective because of a modification made by Reed. She further alleged that Reed Tool knew her husband was inadequately trained and that they required him to work "such long hours as violated minimum requirements of law."

Reed Tool moved for summary judgment asserting there was no question of material fact. Mrs. Copelin failed to file a response, and summary judgment was granted. The court of appeals held that the intentional maintenance of an unsafe workplace would supply the intent necessary to hold the employer liable for an intentional injury, and that since the depositions did not disprove an intent to maintain an unsafe

workplace, Reed Tool had not established there were no questions of material fact.

 The Texas Workers' Compensation Act is the exclusive remedy for work-related injuries with the exception of intentional injury. *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex. 1981); *Middleton v. Texas Power & Light*, 108 Tex. 96, 185 S.W. 556, 560 (1916). "An injury caused by willful negligence or willful gross negligence is not an intentional injury necessary to avoid the effect of the Workers' Compensation Act." *Castleberry*, 617 S.W.2d at 666. Falling within the intentional injury exception are direct assaults by an employer on an employee. *See Richardson v. The Fair, Inc.*, 124 S.W.2d 885 (Tex.Civ.App.—Beaumont 1939, writ dism'd, judgmt cor.). The fundamental difference between negligent injury, or even grossly negligent injury, and intentional injury is the specific intent to inflict injury. The Restatement Second of Torts defines intent to mean that "the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1965).

Some courts have applied the Restatement definition to the worker's compensation intentional injury exception. In construing the Louisiana Worker's Compensation Statutes, the Louisiana Supreme Court held "[t]he meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did." *Bazley v. Tortorich*, 397 So.2d 475, 482 (La.1981). Moreover, "[t]o establish intentional conduct, more than the knowledge and appreciation of risk is necessary; the known danger must cease to become only a foreseeable risk which an ordinary, reasonable, prudent person would avoid (ordinary negligence), and become a substantial certainty." *VerBouwens v. Hamm Wood Products*, 334 N.W.2d 874, 876 (S.D.1983). *See Schreder v. Cities Service Co.*, 336 N.W.2d 641, 644 (N.D.1983).

The overwhelming weight of authority from other jurisdictions is that the common law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury. 2A A. Larson, *The Law of Worker's Compensation* § 68.-13 (1983). This view is endorsed by Larson who states:

> Even if the alleged conduct goes beyond aggravated negligence and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of its accidental character.

Several courts have held that the intentional failure to provide a safe workplace does not constitute an intentional injury in order for the claimant to escape worker's compensation limits. *Griffin v. George's, Inc.*, 267 Ark. 91, 589 S.W.2d 24 (1979); *Johns-Manville Products Corp. v. Contra Costa Superior Court*, 27 Cal.3d 465, 165 Cal. Rptr. 858, 612 P.2d 948 (1980); *Kofron v. Amoco Chemicals Corp.*, 441 A.2d 226 (Del.1982); *Southern Wire & Iron Inc. v. Fowler*, 217 Ga. 727, 124 S.E.2d 738 (1962); *Great Western Sugar Co. v. District Court*, 610 P.2d 717 (Mont.1980); *Jacobsen v. Southeast Distributors, Inc.*, 413 So.2d 995 (La.App.1982). *See McCoy v. Liberty Foundry Co.*, 635 S.W.2d 60 (Mo.App. 1982); *Kennecott Copper Corp. v. Reyes*, 75 Nev. 212, 337 P.2d 624 (1959); *Cooper v. Queen*, 586 S.W.2d 830 (Tenn.App.1979, writ denied). Moreover, the intentional modification or removal of safety controls or guards is not the equivalent of an intentional injury. *Rosales v. Verson Allsteel Press Co.*, 41 Ill.App.3d 787, 354 N.E.2d 553 (1976); *McAdams v. Black & Decker Mfg. Co., Inc.*, 395 So.2d 411 (La.App.1981); *Santiago v. Brill Monfort Co.*, 10 N.Y.2d 718, 176 N.E.2d 835 (1961), *Duk Hwan Chung v. Fred Meyer, Inc.*, 276 Or. 809,

556 P.2d 683 (1976); *Foster v. Allsop Automatic, Inc.*, 86 Wash.2d 579, 547 P.2d 856 (1976). The intentional violation of a safety regulation does not authorize recovery beyond that provided by workers' compensation statutes. *Williams v. International Paper Co.*, 129 Cal.App.3d 810, 181 Cal. Rptr. 342 (1982); *Duncan v. Perry Packing Co.*, 162 Kan. 79, 174 P.2d 78 (1946); *Cortez v. Hooker Chemical and Plastics Corp.*, 402 So.2d 249 (La.App.1981); *Roberts v. Barclay*, 369 P.2d 808 (Okla.1962); *Evans v. Allentown Portland Cement Co.*, 433 Pa. 595, 252 A.2d 646 (1969). Even the intentional failure to train an employee to perform a dangerous task does not constitute an intentional injury. *Law v. Dartt*, 109 Cal.App.2d 508, 240 P.2d 1013 (1952). *See Kittell v. Vermont Weather Board, Inc.*, 138 Vt. 439, 417 A.2d 926 (1980). Requiring an employee to work long hours is not tantamount to an intentional injury. *Lemaire v. Younger Transp., Inc. of Tex.*, 443 So.2d 662 (La.App.1983); *Shores v. Fidelity & Cas. Co. of New York*, 413 So.2d 315 (La.App.1982).

While these results may seem harsh, as Larson points out, it is not the gravity or depravity of the employer's conduct but rather the narrow issue of intentional versus accidental quality of the injury.

> The intentional removal of a safety device or toleration of a dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the words, it cannot be said, if such an injury does happen, that this was deliberate infliction of harm comparable to an intentional left jab to the chin.

2A A. Larson, *The Law of Worker's Compensation* § 68.13 (1982). The exclusive remedy provision is an essential element of the worker's compensation scheme. The Act established a system of liability without fault. In exchange, the employee had to give up certain elements of damage recoverable under common law negligence. The system balances the advantage to employers of immunity from negligence and potentially larger recovery in common law actions against the advantage to employees of relatively swift and certain compensation without proof of fault. Worker's compensation is based on the principle that the cost of medical services and benefits provided is part of the cost of doing business and thus is borne directly by the employer, and ultimately by the general public, as part of the cost of goods and services. The continued effectiveness of the worker's compensation scheme depends on the continued ability to spread the risk of such losses. If employers are required to provide not only worker's compensation but also to defend and pay for accidental injuries, their ability to spread the risk through reasonable insurance premiums is threatened, and the balance of advantage and detriment would be significantly disturbed. *Rosales v. Verson Allsteel Press Co.*, 41 Ill.App.3d 787, 354 N.E.2d 553, 555–556 (1976). *See Griffin v. George's Inc.*, 262 Ark. 91, 589 S.W.2d 24, 27 (1979); *Johns-Manville Products Corp. v. Contra Costa Superior Court*, 27 Cal.3d 465, 165 Cal. Rptr. 858, 612 P.2d 948 (1980).

■ We hold that the intentional failure to furnish a safe place to work does not rise to the level of intentional injury except when the employer believes his conduct is substantially certain to cause the injury.

■ Mrs. Copelin's reliance on *Bennight v. Western Auto Supply Co.*, 670 S.W.2d 373 (Tex.App.—Austin 1984, writ ref'd n.r.e.) is misplaced. *Bennight* does not hold that the intentional breach of the duty to furnish a safe place to work can supply the requisite intent to injure. *Bennight* is limited to its facts.

■ In accordance with our holding, we now decide whether summary judgment for the defendant was proper in this case. Pursuant to the pretrial conference, the trial court limited Mrs. Copelin's witnesses to Willie Graves and Carl Graves for proof of intentional injury. This order was not contested. Both witnesses testified in depositions that they had no knowledge of anyone from Reed Tool who had intended to injure George Copelin. Neither expressed any knowledge of anyone tampering with the lathe in such a way as to result in injury. Neither was at work at the time of the injury, and neither knew of an eyewitness. Both testified that they

believed the injury happened because Copelin attempted to operate the machine improperly. The machine was nicknamed "jaws," and some employees did not want to operate it. There had been prior injuries on most of the lathes similar to the machine in question as well as that particular machine. None of those prior injuries was debilitating, disabling, or in any way as serious as Mr. Copelin's injury. There was also testimony that Reed Tool employees sometimes had to work twelve-hour shifts, seven days a week. While the summary judgment evidence might raise a question of fact concerning gross negligence, it does not raise a question of fact that Reed Tool knew with substantial certainty that George Copelin would be injured.

Summary judgment is proper when the summary judgment evidence does not raise a question of fact concerning the plaintiff's allegations. In order to avoid summary judgment, Mrs. Copelin had to respond to the motion and show why summary judgment was improper, or why she should be entitled to additional discovery in order to raise a question of fact. This she did not do.

The summary judgment was correct. Accordingly, we reverse the judgment of the court of appeals and affirm the trial court judgment.