Mary RODRIGUEZ, Appellant,

v.

NAYLOR INDUSTRIES, Appellee.

No. 01–87–00141–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 26, 1988.

Rehearing Denied June 23, 1988.

Stephen A. Moyik, Hartman, Lapham, Yanta & Moyik, Victoria, for appellant.

Carroll Featherston, Cliff Harrison, Tekell, Book, Matthews, & Limmer, Houston, for appellee.

Before SAM BASS, DUGGAN and LEVY, JJ.

## OPINION

SAM BASS, Justice.

This is an appeal from a summary judgment.

We affirm.

This is a personal injury suit for an intentional tort. The appellant is the spouse of Juan Rodriguez, who was injured in an accident that occurred while he was employed by the appellee, Naylor Industries. Summary judgment evidence showed that Cameron, one of Rodriguez' supervisors, told Rodriguez to drive a truck from Rock-

dale to Port Lavaca, and then to Corpus Christi.

The truck had several tires that were in shabby condition. In particular, they lacked treads and were so cracked and split that the inner tube was visible in one of them. Rodriguez examined the truck's tires and commented to Cameron on their appearance. Cameron responded, "You damn Mexicans, all you do is just bitch.... That truck has to go to Port Lavaca and then to Corpus Monday morning.... Either take it or walk."

As Rodriguez drove to Port Lavaca, one of the front tires exploded. Rodriguez asked Wallace, another supervisor, to get a spare tire from Houston. Wallace advised Rodriguez, instead, to rotate one of the back tires forward as a replacement.

Near Victoria, a second tire exploded, causing the truck to flip.[1] Rodriguez survived and alleged that he was injured so severely that he was thereafter incapable of maintaining marital relations with his wife. Rodriguez testified (by deposition) that Cameron instructed him not to tell anyone about the truck's condition and the accident.

As far as claims of negligence and gross negligence are concerned, Rodriguez is limited to the exclusive remedy provided by Texas' Worker's Compensation Act ("the Act"). Tex.Rev.Civ.Stat.Ann. art. 8306, sec. 3(a) (Vernon Supp.1988); *Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 739 (Tex.1985). The Act, however, does not bar an employee from suing his employer upon a claim of intentional tort. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 933 (Tex.1983).

In the instant case, the appellant alone seeks damages for loss of consortium, a wife's claim for loss of consortium being her separate property. *Reed Tool Co. v. Copelin*, 610 S.W.2d at 738. However, because a wife's cause of action for loss of consortium arising from an injury to her husband is derivative of her husband's suit, the appellant is barred from suing the ap-

pellee unless she can show that her husband's injury was the result of an intentional tort. *Reed Tool Co. v. Copelin*, 610 S.W.2d at 739.

The appellee won a summary judgment based upon the argument that the appellant failed, as a matter of law, to plead an intentional injury or to demonstrate an intentional injury by competent summary judgment evidence. The appellant's sole argument in support of her claim of intentional tort was, and remains, that Rodriguez was forced by Wallace to drive the truck in its dangerous condition and that Wallace told Rodriguez that "his very job depended on it."

The record contains no evidence that *Wallace* made any statement remotely similar to that which the appellant ascribes to him. In fact, the appellant failed to provide an affidavit from Rodriguez stating that *anyone* told him his job required him to drive the truck in its dangerous condition.

To the contrary, the appellee included deposition testimony by Rodriguez *himself* that Wallace never spoke harshly to him and never threatened him about his job. Indeed, the appellee points to Rodriguez' testimony that when he told Wallace that he was not going to drive the truck on the shoulder of the road because of the uneven condition of the shoulder, which might cause another tire to explode, Wallace told him to do whatever he thought was best. In short, the record does not reflect any threat made by an employee of the appellee to Rodriguez concerning his job.

The record reveals only three statements made by employees of the appellee that even approach the level of extremeness required to support a finding of intent: (1) Cameron's insensitive response to Rodriguez' concern about the tires; (2) Wallace's negative response to Rodriguez' suggestion that they seek a spare tire from Houston; and (3) Cameron's instruction to Rodriguez to "keep quiet" about the accident. Other than these statements, the only other possible evidence of the appellee's intent to in-

---

**1.** Although the appellant indicates in his brief that three tires exploded, nothing in the record

supports this theory. Rather, appellant's own deposition reflects that only two tires exploded.

jure its employee is in the form an affidavit of an expert that the appellant attached to her reply to the appellee's motion for summary judgment. The affiant stated that, in the affiant's expert opinion, a supervisor would know with substantial certainty that the condition of the truck would result in an explosion of the tires.

 Neither the affidavit nor any of the above-listed statements are summary judgment evidence of intent to cause injury. These statements are evidence tending to show negligence or gross negligence. The rule in Texas is that "an injury caused by willful negligence or willful gross negligence is not an intentional injury [such as is] necessary to avoid the effect of the Worker's Compensation Act." *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex.1981). Intentional injury requires a *specific* intent to inflict injury. *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 407 (Tex.1985). The Texas Supreme Court has adopted the definition of "intent" provided by Restatement (Second) of Torts section 8A (1965), "the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.* at 406.

 For example, the intentional failure to furnish a safe place to work does not rise to the level of intentional injury except when the employer believes his conduct is substantially certain to cause the injury involved. *Id.* at 407; *but see Bennight v. Western Auto Supply Co.*, 670 S.W.2d 373 (Tex.App.—Austin 1984, writ ref'd n.r.e.). By analogy, we find that the intentional failure to provide an employee with safe transportation does not rise to the level of intentional tort except when the employer believes his conduct is substantially certain to cause injury.

Although Cameron's and Wallace's comments might create a fact issue as to the existence of negligence, or even gross negligence, the appellant has failed to raise a question of fact that the appellee knew with substantial certainty that Rodriguez would be injured. *See* at 408. The expert's testimony was not sufficient to establish the specific intent required by *Reed*

*Tool Co. v. Copelin*, 689 S.W.2d at 404, because knowledge that a tire is substantially certain to explode is not the equivalent of knowledge or substantial certainty that a defective tire will injure an employee.

The judgment is affirmed.

LEVY, J., dissents.

LEVY, Justice, dissenting.

My dissent focuses on the narrow interpretation that the majority attaches to the "intentional injury" required to escape the exclusive remedy effect of the Workers' Compensation Act, Tex.Rev.Civ.Stat.Ann. arts. 8306–8309i (Vernon 1967 & Supp. 1988). The Act generally exempts employers from common law liability to their employees based on negligence, or even gross negligence, and is the employee's exclusive remedy for a work-related accidental injury. *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex.1985). Excepting only intentional injuries, the Act's exclusive remedy (art. 8306, § 3(a)) establishes liability without proof of fault and with relative speed and certainty, providing medical and disability benefits to the injured worker, and thus theoretically "balances the advantage to employers of immunity from negligence and potentially larger recovery in common law actions." *Id.* at 407.

This appeal, however, calls into question the blurred distinction between "accidental" and "intentional" injuries, and a re-examination of the public policy underlying such distinction. Whether an employer's gross and outrageous indifference to the life and safety of an employee, after repeatedly being warned of the dangerous working conditions that the employee was confronting, should be treated as *functionally* equivalent to an intent to injure, is the issue on which I differ from the majority.

In the case at bar, appellant Mary Rodriguez's third-party cause of action for loss of consortium is derivative of Juan's (her husband's) action, to the extent that the tortfeasor's liability to the impaired spouse must first be established. *See Bennight v. Western Auto Supply Co.*, 670 S.W.2d 373

(Tex.App.—Austin 1984, writ ref'd n.r.e.). If Mr. Rodriguez's injury was "accidental," Mrs. Rodriguez's loss of consortium is not compensable because her claim, like that of her husband's, is barred by the exclusive remedy afforded by the Workers' Compensation Act. On the contrary, if Juan's injury resulted from an intentional tort, Mary's claim for loss of consortium is not barred by the Act. *Massey v. Armco Steel Co.*, 652 S.W.2d 932 (Tex.1983).

Where the employer deliberately exposes the employee to an unreasonable risk of harm, and the employee thereafter sustains such harm, it is inequitable to hold the employer immune from common law liability on the flimsy ground that he did not intend an *actual* or *specific* injury to the employee. Considerations of public policy—particularly the prevention of an unnecessary, foreseeable, and unreasonable risk of harm to the employee—are not inherently incompatible with, and should modify, the basic theory of the Act, at least to the extent of not rewarding gross and callous indifference to the employee's life, safety, or health. It is not unreasonable to infer an employer's intent to injure from the injurious consequences that normally and foreseeably flow from such of his acts that constitute outrageous indifference to the employee's life, safety, or health, consequences that the employer knows or should know are substantially certain to result. *See Bennight v. Western Auto Supply Co.*, 670 S.W.2d at 377; *Restatement (Second) of Torts* § 8A (1965).[1]

In the case before us, Rodriguez argues that, before he even started on his trip, the six-wheeler truck had several badly worn tires—some not only lacking treads, but also being split and cracked, and one with its inner tube visible. Nevertheless, his supervisor insisted that he drive the truck as is, despite Rodriguez's misgivings about its unsafe condition. The first tire explosion occurred near Schulenberg, and Rodriguez called one of his supervisors to bring a good spare tire from Houston. Wallace, the supervisor, told him instead to rotate one of the back tires forward as a replacement. Feeling that his employment was dependent on the completion of the trip, Rodriguez continued despite his fear of "the substantial certainty of another blowout." As feared, the second explosion occurred near Victoria, causing the truck to veer off the road and flip with Rodriguez inside, with the proximate result being his severe injuries that formed the basis of this lawsuit.

When the majority treats the employer's conscious indifference to Rodriguez's safety and life as distinct from an actual intent to injure, thus providing the employer insulation from a common law action based on gross negligence—even malicious or culpable negligence—it, of course, follows the primary authority in the field, A. Larson, who wrote that

> the common law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury. 2A, *The Law of Worker's Compensation*, § 68.13 (1983).

But we also signify that the herein proposed judicial inhibition against such employer's gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct, must yield to the traditionally preferred priority assigned to the employer's "continued ability to spread the risk of such losses ... through reasonable insurance premiums." *Reed Tool Co. v. Copelin*, 689 S.W.2d at 407. We must choose, and I happen to think that the law should discourage, not ignore, such gross employer negligence, and that the employee's life, health, and safety are more important than even these financial considerations. The State has a more compelling interest in the protection of its workers from foreseeable

---

**1.** Restatement (Second) of Torts § 8A (1965), provides:

> The word "intent" is used throughout the Restatement of this subject to denote that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.

and likely injury—or death—than in an efficient system of spreading the costs of doing business.

We need not be bound by Larson or by prior legislative or judicial inaction in this area of tort law because, as the Texas Supreme Court held in *Sanchez v. Schindler*, 651 S.W.2d 249, 252 (Tex.1983), "tort law has traditionally been developed primarily through the judicial process." Courts "possess the legitimate heritage of common law innovation that develops new principles to accommodate changing values." *Ivy v. Army Times Publishing Co.*, 428 A.2d 831, 835 (D.C.App.1981) (Ferren, J., dissenting).

Further, Tex.R.Civ.P. 166–A requires a defendant who moves for summary judgment on an essential element of the plaintiff's case to establish that there exists no genuine issue of material fact on that element. The burden is on the movant to establish that it is entitled to judgment as a matter of law. I do not find that the defendant has met its burden. The majority is improperly affirming the summary judgment based on the non-movant, Rodriguez's, failure to establish an intent to injure as a negligence basis for the recovery of damages, but Naylor Industries has failed to establish its right to judgment as a matter of law. Whether Naylor's gross negligence, after repeated warnings, is tantamount to an intent to injure, or to knowing, with substantial certainty, than an injury will occur, is an essential question for a jury to decide.

Because I think that the knowing, conscious, deliberate exposure of an employee to an unreasonable risk of harm is *functionally* equivalent to knowing with substantial certainty that the employee will be so harmed, thus imputing to such a callous employer an intent to injure, I dissent.