NUMBER 13-99-394-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


KELLY J. WELCH AND ALLISON WELCH
, Appellants,


v.



REYNOLDS METALS COMPANY AND ARLON BOATMAN
, Appellees.

___________________________________________________________________


On appeal from the 36th District Court


of San Patricio County, Texas.


___________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Dorsey and

Rodriguez

Opinion by Chief Justice Seerden




 This is an appeal from the trial court's grant of summary
judgment. Kelly J. Welch(1), appellant, was employed by Reynolds
Metals Company (Reynolds), appellee, during which time, he contends,
he was exposed to asbestos fibers which infiltrated his lungs, resulting
in a subsequent diagnosis of asbestosis. Welch brought a lawsuit
against Reynolds and Arlon Boatman, a supervisor employed by
Reynolds, contending that Reynolds and Boatman were aware of, but
consciously disregarded, a substantial certainty that he would suffer
asbestos-related injuries.(2) Reynolds filed a no-evidence motion for
summary judgment. Tex. R. Civ. P. 166a(i). The trial court subsequently
granted Reynolds' motion, and this appeal ensued. We reverse and
remand.

Factual Summary

 Welch began his employment with Reynolds on or about
December 31, 1986. He was employed at Reynolds' Sherwin Alumina
plant in Gregory, Texas. Welch contends that during the course of his
employment, he was required, on numerous instances, to work with
asbestos-containing products. He alleges that until 1993, Reynolds did
not discuss either the dangers of working with asbestos or the
precautionary measures available to prevent inhalation of asbestos
fibers. Welch asserts that in 1993, Reynolds' employees informed him
of the dangers of asbestos exposure and recommended that he use
protective equipment to prevent inhalation of asbestos fibers. In 1995,
Welch was diagnosed with asbestosis. 

 Welch filed this lawsuit alleging that Reynolds was liable for
intentional injury to him, battery, intentional infliction of emotional
distress, malice, and fraud. He contended that Reynolds was aware of
a "substantial certainty" that he would suffer injury. Reynolds brought
its no-evidence motion for summary judgment alleging that there was
no evidence of intentional conduct because Welch could not 
demonstrate that Reynolds had either a specific intent to cause a
specific injury or an awareness of a substantial certainty that its
conduct would result in harm to Welch. 

 Welch filed a response, which, inter alia, included the affidavit of
Richard Cohen, M.D. Dr. Cohen's affidavit recites that after reviewing
numerous documents supplied by Reynolds, that it was his opinion that
"Reynolds Metals Company realized that if their workers such as Kelly
Welch were exposed to harmful levels of asbestos, those workers were
substantially certain to contract asbestos-related injuries." Dr. Cohen
further opined that the documents demonstrated that Reynolds had
implemented policies and procedures to protect against asbestos
exposures. He concluded, however, that those policies and procedures
were either not being effectively conveyed to workers such as Welch,
or that the policies were being ignored or not followed. Dr. Cohen
stated that Reynolds must have been aware that Welch was being
exposed, without protection, to visible levels of asbestos-containing
dust. He related that Reynolds had placed Welch on an asbestos
surveillance program as early as 1987 and opined that Welch was
placed in that program because Reynolds realized Welch's job entailed
a significant possibility of asbestos exposure. Dr. Cohen concluded that
"Reynolds Metals Company knew to a substantial certainty that
workers such as Kelly Welch would contract asbestos diseases by
reason of their jobs at the Gregory, Texas plant."

 Reynolds filed a reply to Welch's response. On the same day,
Reynolds filed a motion to strike Cohen's affidavit on the basis that
Cohen did not satisfy the reliability requirements imposed upon experts. 
See e.g., Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579
(1993); Gamill v. Jack Williams Chevrolet, 972 S.W.2d 713, 726-727
(Tex. 1998); E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d
549, 557 (Tex. 1995). Without making an express ruling on this
motion, the trial court granted summary judgment in favor of Reynolds,
ruling that it had "examined the Motion [for summary judgment] and
summary judgment evidence" in reaching its conclusion. 

 By a single issue, Welch contends that the trial court erred in
concluding that there was no evidence from which a jury could have
determined that Reynolds was substantially certain that its acts and
omissions would result in his injury. 

Standard of Review A no-evidence summary judgment is the functional equivalent of
a pre-trial directed verdict. Zapata v. Children's Clinic, 997 S.W.2d 745,
747 (Tex. App.--Corpus Christi 1999, pet. denied). Accordingly, in
reviewing the grant of a no-evidence summary judgment, this Court
applies the legal sufficiency standard of review used in reviewing
directed verdicts. Id.; see also Macias v. Fiesta Mart, 988 S.W.2d 316,
316-17 (Tex. App.--Houston [1st Dist.] 1999, no. pet.); Moore v. K-Mart
Corp., 981 S.W.2d 266, 269 (Tex. App.--San Antonio 1998, pet.
denied); cf. Morgan v. Rogers, 27 S.W.3d 928, 929 (Tex. 2000) (tacitly
adopting same standard). We review the evidence in the light most
favorable to the party against whom the no-evidence summary
judgment was granted, disregarding all contrary evidence and
inferences. Zapata, 997 S.W.2d at 747 (citing Merrell Dow Pharm., Inc. 
v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)). The trial court may not
grant a no-evidence summary judgment if the respondent brings
forward more than a scintilla of probative evidence which raises a
genuine issue of material fact. Tex. R. Civ. P. 166a(i); Zapata, 997
S.W.2d at 747. When the evidence creates a probability that reasonable
and fair-minded people could differ in the conclusions reached from that
evidence, it is more than a scintilla. Zapata, 997 S.W.2d at 747 (citing
Moore, 981 S.W.2d at 269; Havner, 953 S.W.2d at 711). Courts have
repeatedly noted that where there is a question of intent, summary
judgment will generally not be proper, because the issue of intent is
fact-intensive and is usually left to the fact finder. See Frias, 999
S.W.2d at 106; RRR Farms, Ltd. v. American Horse Ass'n, Inc., 957
S.W.2d 121, 132 (Tex. App.--Houston [14th Dist.] 1997, pet. denied);
Bauer v. Jasso, 946 S.W.2d 552, 556 (Tex. App.--Corpus Christi 1997,
no pet.); see also State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374
(Tex. 1993) (question of intent to harm another is generally a question
of fact uniquely within the province fo the jury).

 In the instant case, Welch brought copious summary judgment
evidence. Reynolds, however, focuses on its motion to strike Cohen's
affidavit and contends that without the affidavit, Welch has not fulfilled
his burden to present evidence. Accordingly, we will initially consider
the trial court's disposition of Cohen's affidavit in determining whether
summary judgment was proper here. 

Ruling on Cohen's Affidavit

 Texas Rule of Appellate Procedure 33.1 provides: 

 (a) In general. As a prerequisite to presenting a complaint
for appellate review, the record must show that: 

 (1) the complaint was made to the trial court by
timely request, objection, or motion . . . .; and

 (2) the trial court:

 (A) ruled on the request, objection, or
motion, either expressly or implicitly .
. . .


Tex. R. App. P. 33.1(a) (emphasis supplied). Several courts have now
recognized that the emphasized language in the rule has loosened the
once-mandatory rule that an express ruling is required to preserve a
complaint for appeal. See Hardman v. Dault, 2 S.W.3d 378, 381 (Tex.
App.--San Antonio 1999, no pet.); Frazier v. Yu, 987 S.W.2d 607, 610
(Tex. App.--Fort Worth 1999, pet. denied); Blum v. Julian, 977 S.W.2d
819, 823 (Tex. App.--Fort Worth 1998, no pet.). Thus, error may be
preserved without an express ruling on a motion, so long as the record
indicates in some way that the trial court ruled on the objection either
expressly or implicitly. See Frazier, 987 S.W.2d at 610 (citing Tex. R.
App. P. 33.1(a)). 

 Reynolds contends that the trial court's grant of its motion for
summary judgment indicates that the court implicitly granted its motion
to strike Welch's summary judgment evidence. Reynolds relies on the
reasoning in Frazier and Blum for its conclusion. We disagree. 

 In Frazier, the parties were involved in an automobile accident. 
Frazier filed suit against Yu; Yu filed a no-evidence motion for summary
judgment. Frazier, 987 S.W.2d at 608. Prior to a scheduled hearing on
the motion for summary judgment, Frazier filed two affidavits. Id. Yu
moved to strike the affidavits. The trial court granted Yu's motion for
summary judgment and noted on its docket sheet that Frazier did not
submit any summary judgment evidence. Id. The court of appeals
affirmed the judgment, seizing upon the fact that the trial court
specifically stated that it had reviewed "all competent summary
judgment evidence." Id. (emphasis in original). The acknowledgment
that it had reviewed only the competent summary judgment evidence
led to an inference that the trial court "implicitly sustained Yu's
objections." Id. 

 The present case is distinguishable from Frazier. In its order
granting summary judgment, the trial court refers only generically to the
summary judgment evidence before it. By referring to some of the
summary judgment evidence before it as "competent," the Frazier court
necessarily implied that it had decided that other evidence before it was
not competent. By making that determination, the trial court
necessarily had dismissed some of the evidence before it. The only
motion to support dismissing any of the evidence was Yu's motion to
strike. This implied that the trial court had sustained Yu's objections. 
Here, there is nothing, short of the grant of the motion for summary
judgment, which leads to the conclusion that the court had made any
determination regarding Reynolds' motion. 

 Similarly, reliance upon the reasoning in Blum is misplaced here. 
Blum filed a lawsuit against Julian. Blum, 977 S.W.2d at 821. Julian
moved for summary judgment providing affidavits as summary
judgment proof. Id. Blum objected to Julian's affidavit. Id. at 823. 
Without expressly ruling on Blum's objections, the trial court granted
summary judgment for Julian. Id. at 821. The court of appeals
concluded that the fact that the trial court granted Julian's motion for
summary judgment created an inference that Blum's objections had
been implicitly overruled. Id. at 823-24. 

 Unlike the present case, however, the inference in Blum is
incontrovertible. In Blum, Julian's affidavits were her only summary
judgment evidence. Id. at 821. Had the trial court sustained Blum's
objections, Julian would have been left without any summary judgment
evidence and only one conclusion, denial, would have obtained on
Julian's motion for summary judgment. Here, by contrast, Welch
presented additional evidence, beyond Cohen's affidavit, to establish the
elements of his claims. While it is plausible to conclude that the trial
court might have chosen to strike Cohen's affidavit, it is equally
plausible that the court simply concluded that Welch had not presented
sufficient evidence to establish his claims. Regardless of the merits of
that conclusion, there is nothing in the record, short of surmise, which
supports the conclusion that the trial court sustained Reynolds'
objections to Cohen's affidavit. 

 We conclude that the record does not support the conclusion that
the trial court's failure to rule on the motion to strike should be
construed as an implicit grant of that motion. 

Propriety of Summary Judgment

 Next, we must consider whether summary judgment was proper
in light of the evidence, including Cohen's affidavit, adduced by Welch. 
 

 In most instances, an employee who suffers a job-related injury
must proceed under the Texas Workers' Compensation Act to achieve
a remedy.(3) See Reed Tool Co. v. Copelin, 689 S.W.2d 404, 406 (Tex.
1985); Frias v. Atlantic Richfield Co., 999 S.W.2d 97, 103 (Tex. App.--Houston [14th Dist.] 1999, pet. denied). However, when the employee
can demonstrate that his injury is the result of the employer's
intentional conduct, the exclusivity of the workers' compensation
remedy is lifted. See Rodriguez v. Naylor Indus., Inc., 763 S.W.2d 411,
412 (Tex. 1989). The burden of proving that an employer's actions rise
to a level permitting recovery for intentional conduct is substantial. In
general, "the intentional failure to furnish a safe place to work does not
rise to the level of intentional injury except when the employer believes
his conduct is substantially certain to cause the injury." Reed, 689
S.W.2d at 407. 

 The line of demarcation between an actionable, intentional act and
a dangerous, yet nevertheless non-compensable, negligent act is
ambiguous. Moreover, this issue has not been addressed in any cases
in which the motion for summary judgment was brought pursuant to
rule 166a(i). Regardless, two seminal cases provide some guidance in
this context. 

 In Reed, after George Copelin was injured while operating a lathe
which had been modified, his wife alleged that Reed Tool intentionally
caused his injuries. Id. at 405. The trial court granted Reed Tool's
motion for summary judgment. On discretionary review, the supreme
court affirmed. The court concluded that there was no summary
judgment evidence to create a fact question as to whether Reed Tool
was substantially certain that its actions would result in injury to
Copelin. In reaching this conclusion, the court explained that the nature
of the employer's liability stems from "the intentional versus the
accidental quality of the injury." Id. at 407. Copelin presented two
witnesses and each testified that he had no knowledge that anyone
from Reed Tool intended to harm Copelin. They testified that they
believed the injury happened because Copelin attempted to operate the
machine improperly. They acknowledged that some employees did not
want to operate the machine and that injuries had previously occurred. 
The court explained that this testimony might create a fact issue as to
gross negligence, but that it did not support a theory of intentional
injury. Id. at 408. 

 In a somewhat similar case, the supreme court reached the
opposite conclusion. See Rodriguez, 763 S.W.2d at 413. In Rodriguez,
Juan Rodriguez was employed by Naylor Industries. He was told to
drive a truck from Rockport, Texas to Port Lavaca and then to Corpus
Christi. Id. at 412. Before departing for this trip, Rodriguez examined
the tires on the truck and discovered that they had no tread and were
cracked. Id. Rodriguez reported the condition of the tires to his
supervisor, but was told that he could either drive the truck as
instructed, in its then-existing condition, or give up his job. Id. 
Rodriguez decided to drive the truck and upon doing so, one of the front
tires blew out. Id. Another Naylor supervisor instructed Rodriguez to
replace the blown-out tire with one of the four tires attached to the back
axle. Id. Rodriguez again objected, but the second supervisor told him
to continue until he could obtain a new tire. Proceeding in that
condition, Rodriguez was injured when one of the rear tires blew out,
causing the truck to flip over. Id. 

 His wife brought an action to recover for Naylor's intentional
conduct in causing Rodriguez's injuries. Naylor brought a motion for
summary judgment based on Rodriguez's deposition testimony that "he
did not know of any reason that anyone at Naylor would want to see
him injured." Id. at 413. The trial court granted summary judgment. 
Id. at 412. On review, the supreme court noted that "just as an
employee's lack of awareness is not conclusive on the issue of an
employer's intent, neither is an employer's statement that he had no
subjective intent to injure an employee." Id. The court acknowledged
that Rodriguez's wife had presented two affidavits, one of a former
Naylor supervisor who had personal knowledge of the truck in question,
and one of an experienced accident reconstructionist. Both affiants
averred that "if the truck were driven in the condition described by Juan
Rodriguez, his supervisor at Naylor would be substantially certain that
the blowout would occur." Id. The former Naylor supervisor added
that "a supervisor would also be substantially certain that the blowout
would cause the truck to go out of control." Id. The supreme court
determined that this evidence was sufficient to create a fact question
and warranted reversal of the summary judgment.

 The instant case is closer to Rodriguez than to Reed. The Reed
court noted the inherent difference between accidents which result
from unsafe work conditions and injuries which are directly attributable
to the intentional choice to maintain an unsafe condition. The court
specifically noted in Reed that Copelin's co-workers acknowledged that
his injuries were likely the result of misuse of the lathe. By contrast, in
Rodriguez, the court focused on the evidence which tended to show
that roll-over was substantially certain to follow from the fact that the
tires on the truck were maintained in an unsafe condition. In other
words, a significant difference between Reed and Rodriguez stems from
the fact that the summary judgment proof showed that specific injury
Rodriguez suffered was exactly the injury which was substantially
certain to occur from Naylor's conduct; Copelin's injuries were wholly
accidental, even though attributable to Reed Tool's actions. Here, based
on his allegations, the injury Welch complains of is not simply an
indirect consequence of Reynolds' actions; if proven, it is precisely the
foreseeable injury likely to follow from Reynolds' alleged actions. 

 Since Reed and Rodriguez, the courts of appeal have likewise
struggled with determining the distinction between intentional injury,
as evidenced by a substantial certainty of injury, and non-intentional
injuries. See e.g., Frias, 999 S.W.2d at 106; Feazell v. Mesa Airlines,
Inc., 917 S.W.2d 895, 901 (Tex. App.--Fort Worth 1996, pet. denied);
Kielwein v. Gulf Nuclear, Inc., 783 S.W.2d 746, 748 (Tex. App.--Houston [14th Dist.] 1990, no pet.). In Kielwein, the plaintiff was
instructed to de-contaminate an area in which highly radioactive
isotopes had been spilled.  Kielwein, 783 S.W.2d at 747. He asked for,
but was not provided with any safety equipment. Id. Kielwein was
subsequently tested and radioactive materials were discovered in his
body. Id. The trial court granted summary judgment for Gulf Nuclear,
Kielwein's employer. 

 The court of appeals reversed, relying heavily on the affidavit of
Kielwein's expert who opined that Kielwein's injury was substantially
certain to follow from Gulf Nuclear's failure to provide appropriate
protective measures. The expert further stated that it was "impossible
for Gulf Nuclear to have been unaware that exposing [Kielwein] to such
risks without any protection whatsoever would be substantially certain
to cause" Kielwein's exposure to radiation. The court of appeals held
that the expert's affidavit raised a material fact question. Id. at 748.

 Reynolds argues that Kielwein is inapposite because in Kielwein,
there was no challenge to the qualifications of the expert. Reynolds
contends that because Cohen's opinions are unreliable, his affidavit
should not be considered here. This, Reynolds suggests, makes the
holding in Kielwein irrelevant to our consideration of this case. 

 There is no support in the record for the assertion that the trial
court implicitly sustained Reynolds' objections to Cohen's testimony. 
Accordingly, Cohen's opinions continue to serve as part of Welch's
summary judgment evidence. 

 Nevertheless, Reynolds also contends that Cohen's opinions are
unreliable as a matter of law. There is a clearly expressed preference for
the trial court to serve as the "gatekeeper" with regard to experts,
determining both qualification and reliability. See Tex. R. Evid. 104(a);
Gamill, 972 S.W.2d at 728; Robinson, 923 S.W.2d at 556. The trial
court did not serve as a "gatekeeper" here. Because we have concluded
that the trial court did not rule in this capacity, we do not have
jurisdiction to review this issue.(4) Tex. R. App. P. 33.1(a)(2)(A). In the
absence of such a determination, we conclude that Cohen's affidavit,
like the expert affidavit in Kielwein, suffices to create a genuine issue of
material fact because it presents more than a scintilla of probative
evidence which tends to put Reynolds' intent in question.(5) 

 Like the affidavit in Kielwein, Cohen's affidavit recites that it would
have been impossible for Reynolds to have been unaware of Welch's
exposure and the likelihood of injury. From this, Cohen concludes that
Reynolds was substantially certain that Welch would contract an
asbestos-related disease. This evidence contradicts Reynolds'
assertions that it did not intend to cause Welch harm. Resolving such
conflicts is inherently the province of the fact finder. 

Summary Judgment on Other Tortious Theories

 Finally, we must address Reynolds' assertion that Welch has not
contested the entry of judgment on any of his other tortious theories:
assault and battery, intentional infliction of emotional distress, gross
negligence, and fraud. However, that assertion is not borne out by
appellant's brief. We agree with Welch that the motion for summary
judgment was premised entirely upon the lack of evidence to show
intent, without regard to the specific claims raised in Welch's original
petition. Welch's proof with regard to intent, in that circumstance, is
sufficient to create genuine issues of material fact with regard to all of
his tortious claims. 

Conclusion

 Because the trial court did not make a ruling on Cohen's reliability,
and because Cohen's affidavit presents more than a scintilla of evidence
to create a genuine issue of material fact with regard to Reynolds'
intent, we conclude that the trial court erred in granting summary
judgment for Reynolds. We also conclude that notwithstanding
Cohen's affidavit, Welch has produced sufficient evidence to create a
genuine issue of material fact. Welch's issue is sustained. 

 The judgment of the trial court is REVERSED and REMANDED for
new trial. 





 ROBERT J. SEERDEN, Chief Justice


Do not publish
.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this 29th day of December, 2000.

 

1. Allison Welch, wife of Kelly J. Welch, is also an appellant in this
action. For the sake of clarity, we will refer to the appellants in the
singular, "Welch." 
2. Welch refers to Reynolds and Boatman generically as
"defendants" throughout his brief and makes no argument specific to
either. Similarly, all motions and briefs filed by "defendants" in this
action were filed jointly by Reynolds and Boatman. Accordingly, we will
consider the propriety of the summary judgment as to both, jointly. 
3. Welch attached his own affidavit to his response to Reynolds
motion for summary judgment. In his affidavit, Welch asserts that he
has not received or sought any worker's compensation benefits related
to his asbestos disease. 
4. Even were we to consider Cohen's qualifications or reliability, in
the absence of a ruling, there is no record upon which we can make an
assessment of such things. The only material in the record related to
Cohen's qualifications is Cohen's affidavit, a curriculum vitae attached
to his affidavit, and repeated references in Reynolds' motion to strike to
Cohen's deposition testimony. We have not found a copy of Cohen's
deposition anywhere in the record. This bare record is an insufficient
basis upon which to make any conclusions regarding the propriety of
Cohen's affidavit. 
5. We also note that Welch presented his own affidavit which is
comprised of readily controvertible factual assertions and numerous
memoranda which suggest that Reynolds was aware of the hazards of
asbestos exposures but did nothing to limit the likelihood of exposure. 
Also included in Welch's summary judgment evidence are memoranda
which memorialize Welch's inclusion on an asbestos surveillance
program as early as 1987, or within a year of Welch's employment. 
While we conclude that Cohen's affidavit creates a question of material
fact regarding Reynolds' intent, we are also convinced that the
remaining evidence, taken as a whole, would also suffice to create a
question of material fact.