Opinion issued April 27, 2017



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00774-CV

———————————

## IN RE PATTI J. WAGNER, AS GUARDIAN OF JENNY WAGNER, AN INCAPACITATED ADULT, Relator

---

## Original Proceeding on Petition for Writ of Mandamus

---

## CONCURRING OPINION

I write separately to explain that there is a second ground for granting mandamus relief to relator, Patti J. Wagner ("Wagner"), as guardian of Jenny Wagner ("Jenny"), an incapacitated adult, in her lawsuit against real parties in interest, Four J's Community Living Center, Inc. ("Four J's") and Anthonia Uduma.

In his order granting Four J's and Uduma a new trial, respondent[1] stated:

> The reason for the Court's grant of new trial is that *the jury's failure to find negligence* on [Esperanza Arzola], who started the fire that was the cause-in-fact of the injuries to [Jenny] and the death of [Tanya James], is so against the great weight of the evidence as to be clearly wrong and manifestly unjust. *See Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988).

(Emphasis added.)

When a party attacks the factual sufficiency of an adverse finding on an issue on which it did not have the burden of proof, the party must demonstrate that the adverse finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In conducting a factual-sufficiency review, we must examine, consider, and weigh all of the evidence that supports or contradicts the jury's finding. *See Francis*, 46 S.W.3d at 242; *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). The jury is the sole judge of the witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). When presented with conflicting testimony, the fact finder may believe one witness and disbelieve others, and it may resolve inconsistencies in

---

[1] Respondent is The Honorable Dan Hinde of the 269th District Court of Harris County. The underlying suit is Patti J. Wagner, as Guardian of Jenny Ann Wagner, as Incapacitated Adult v. Four J's Community Living Center, Inc. and Anthonia Uduma, No. 2009-40925 (269th Dist. Court, Harris County, Tex.).

the testimony of any witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

In Question One of his charge, respondent asked the jury, "Did the negligence, if any, of those named below [Four J's, Uduma, and Arzola] proximately cause the injuries in question?" In pertinent part, he instructed the jury that

> "'Negligence' means failure to use ordinary care—that is, failing to do that which a person or company of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.
>
> "Ordinary care" means that degree of care that would be used by a person or company of ordinary prudence under the same or similar circumstances.

In regard to Arzola, the jury answered, "No."

In Question Thirteen, which was predicated on an affirmative answer to Question One in regard to Arzola, respondent asked the jury:

> Did the injuries to Jenny Ann Wagner arise from a criminal act committed by Esperanza Arzola?

Respondent instructed the jury:

> "Criminal act" means arson, assault, criminal mischief, manslaughter, or reckless damage or destruction.
>
> A person commits "arson" if the person starts a fire, regardless of whether the fire continues after ignition, or causes an explosion with the intent to destroy or damage:
>
> . . .
>
> > 2) Any building, habitation, or vehicle:
> >
> > . . .

3

f) When the person is reckless about whether the burning or explosion will endanger the life of some individual or the safety of the property of another.

A person also commits "arson" if the person *intentionally* starts a fire or causes an explosion and in so doing:

1) Recklessly damages or destroys a building belonging to another; or

2) *Recklessly* causes another person to suffer bodily injury or death.

(Emphasis added.)

Further, respondent defined "intentionally" and "recklessly" as follows:

A person acts "intentionally," or with intent, with respect to the nature of her conduct or to a result of her conduct when it is her conscious objective or desire to engage in the conduct or cause the result.

A person acts "recklessly," or is reckless, with respect to circumstances surrounding her conduct or the result of her conduct when she is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

The parties have submitted post-submission briefing on the question, raised at oral argument, of whether the jury's negative answer to Question One in regard to Arzola should be upheld on the theory that the jury could have reasonably concluded that because Arzola intentionally started the fire and recklessly caused Jenny's injuries, Arzola did not *negligently* start the fire and cause Jenny's injuries.

The Texas Supreme Court has recognized that the "fundamental difference between negligent injury, or even grossly negligent injury, and intentional injury is

4

the specific intent to inflict injury." *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985). The court noted that the Restatement Second of Torts defines intent to mean that "the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 8A (1965)).

For example, in *Fulmer v. Rider*, the jury found that the decedent acted negligently in pointing a rifle in the direction of Rider and Hester, the decedent acted negligently in discharging the rifle at a time when they were in the path of its barrel, and that both acts of negligence proximately caused their injuries. 635 S.W.2d 875, 876 (Tex. App.—Tyler 1982, writ ref'd n.r.e.). Fulmer, who sued on behalf of the estate of the decedent, argued that the testimony of Rider and Hester did not prove that the decedent had acted negligently in shooting them; to the contrary, Rider and Hester asserted that the decedent had acted willfully and intentionally. Fulmer urged the court to sustain her no-evidence and insufficiency points because Rider and Hester had tried and submitted their case on a negligence theory and did not seek any issues on whether the decedent had acted willfully and intentionally. Thus, Fulmer's position was that Rider and Hester had failed to establish their negligence case. *Id.* at 879.

In analyzing the issue, the court looked to the Corpus Juris Secundum on Negligence, which states:

> The difference between intent and negligence, in a legal sense, ordinarily is nothing but the difference in the probability, under the circumstances known to the actor and according to common experience, that a certain consequence or class of consequences will follow from a certain act. The words "negligence" and "intentional" are contradictory; negligence is not synonymous with intentional action.

*Id.* at 881 (quoting 65 C.J.S. *Negligence* § 1(7) (1966)); *see also* 65 C.J.S. *Negligence* § 17 (2017). It also provided that negligence:

> excludes the idea of intentional wrong; the absence of an intent or purpose to inflict injury of which complaint is made is essential to the legal conception of negligence, is the, or a, distinguishing characteristic thereof, and is an element which distinguishes it from other torts, since, where an intention to inflict the injury exists, whether that intention is actual or constructive only, the wrongful act is not negligent but is one of violence or aggression or is fraudulent, willful, or wanton.

*Id.* at 881–82 (quoting 65 C.J.S. *Negligence* § 3 (1966)); *see also* 65 C.J.S. *Negligence* § 28 (2017). And the court looked to the Restatement (Second) of Torts, which contrasts negligence with intent as follows:

> The definition of negligence given in this Section includes only such conduct as creates liability for the reason that it involves a risk and not a certainty of invading the interest of another. It therefore excludes conduct which creates liability because of the actor's intention to invade a legally protected interest of the person injured or of a third person.

*Id*. (quoting RESTATEMENT (SECOND) OF TORTS § 282, cmt. d (1965)); *see also* RESTATEMENT (SECOND) OF TORTS § 8A, cmt. b. (defining "intent" as including knowledge that conduct will invade interest, as well as purpose to invade it).

6

Accordingly, the *Fulmer* court concluded that the decedent's shooting of Rider and Hester was shown by all the evidence to be a willful and intentional act. 635 S.W.2d at 876. Thus, the court held that Rider and Hester could not recover on their negligence claims, notwithstanding that they had pleaded negligence and the trial court had submitted the issue to the jury. *Id.* at 881.

Here, Four J's and Uduma, in their post-submission brief, assert that "there is no evidence in the record that the injuries suffered by Jenny were specifically intended by Arzola; rather they were simply an unintended consequence of an intentional act—otherwise known as negligence." *See Malouf v. Dallas Athletic Country Club*, 837 S.W.2d 674, 677 (Tex. App.—Dallas 1992, writ dism'd w.o.j.). They further assert, to the extent that the jury might have found Arzola "not negligent" because it concluded that she had acted intentionally, respondent correctly granted a new trial.

Wagner, in her post-submission brief, notes that although there was an "absence of animosity directed at Jenny," "there was room for debate about Arzola's state of mind." Indeed, the record reveals that Arzola admitted to setting the fire and "murdering her home," and that she was upset with her caretaker. Wagner asserts that from this evidence, the jury could have reasonably found that Arzola "intended the consequences of her conduct or was substantially certain that they would result."

7

In light of the well-established fact that the words "negligence" and "intentional" are "contradictory," the trial court's instructions, and the evidence presented at trial, the jury could have reasonably concluded that Arzola intentionally started the fire and recklessly caused Jenny's injuries. Thus, it could have further found that Arzola did not negligently start the fire and cause Jenny's injuries. *See Fulmer*, 635 S.W.2d at 881 (quoting C.J.S. *Negligence* § 1(7) (1966)). Although, as Four J's and Uduma note, respondent's charge did not authorize the jury to "excuse" Arzola's negligence if it found that she acted intentionally, the jury's negative answer to Question One in regard to Arzola's negligence is not so "against the great weight" of the evidence as to be clearly wrong and manifestly unjust.

In 1976, this Court erroneously stated that an "intentional act" can "constitute negligence." *Dartez v. Gadbois*, 541 S.W.2d 502, 506 (Tex. Civ. App.—Houston [1st Dist.] 1976, no writ). There, a father sued a swimming pool owner for injuries his son sustained while swimming in the pool when another child threw a berry that struck his son in the eye. *Id.* The father argued in the trial court that the charge erroneously asked the jury to find whether the negligence of the berry-thrower was a proximate cause of his son's injuries because the evidence showed his conduct to have been intentional and there was no evidence raising an issue of negligence. *Id.* This Court, without citation to authority, stated that "an intentional act may nevertheless constitute negligence on the part of the actor." *Id.*

8

However, the Texas Supreme Court has held that there is a "fundamental difference between negligent injury, or even grossly negligent injury, and intentional injury." *Reed Tool Co.*, 689 S.W.2d at 406; *see also Gavrel v. Lieberman*, No. 2-08-414-CV, 2010 WL 1270334, at *2 (Tex. App.—Fort Worth Apr. 1, 2010, no pet.) (mem. op.) (holding there is "fundamental difference between a claim for negligence and an intentional tort" (citing *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985))).

Because the jury, based on respondent's instructions and the evidence presented, could have reasonably concluded that Arzola intentionally started the fire and recklessly caused Jenny's injuries, its negative answer to Question One of the charge is not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justice Jennings and Keyes.

Jennings, J., concurring.

9