Richard **URDIALES**, Jr., Appellant,

v.

**CONCORD TECHNOLOGIES DELAWARE, INC.,** Appellee.

No. 14–02–00244–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 30, 2003.

Rehearing Overruled Nov. 20, 2003.

Shalanda Deshon Moore, Houston, for appellant.

Charles T. Kelly, Marc J. Wojciechowski, Houston, for appellee.

Panel consists of Chief Justice BRISTER and Justices WANDA McKEE FOWLER and EDELMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

Richard Urdiales, Jr. sued his former employer, appellee Concord Technologies Delaware, Inc., because his supervisor, Alfredo Cantu, assaulted him. The trial court granted summary judgment on his claims, apparently concluding that (1) they were barred by the Texas Workers' Compensation Act and (2) he was not engaged in a protected activity. We affirm for these same reasons and a few additional ones.

### A. FACTUAL BACKGROUND

The following facts are drawn from Urdiales' petition. On March 28, 2000, Cantu struck Urdiales in the chest with a steel pipe during an argument started because Urdiales was late returning from lunch. Urdiales suffered chest pains and a contusion. Cantu was Urdiales' supervisor at Concord. Cantu received a written warning from Concord, and eventually pleaded nolo contendere to criminal assault. Unhappy with Concord's response to the incident, Urdiales filed suit against Concord and Cantu. Concord then fired Urdiales, allegedly because he filed the lawsuit.

The lawsuit contained numerous causes of action against Concord, including violation of Texas Labor Code section 21.055, assault and battery, intentional infliction of emotional distress, negligent hiring, negligent retention, negligent supervision and training, negligent entrustment, and liability based on respondeat superior. The lawsuit also contained claims against Cantu.

Concord moved for summary judgment, claiming it was entitled to it because all of Urdiales' claims were either barred by the Texas Workers' Compensation Act or did not fall within an exception to the Act. The trial court granted summary judgment in favor of Concord on all of Urdiales' claims against it and denied Urdiales' partial no-evidence motion for summary judgment; she also denied a motion to reconsider. The trial court then severed the claims against Concord and entered a final judgment for Concord. After doing that, she recused herself. This appeal followed.

### B. ISSUES ON APPEAL

On appeal, Urdiales contends the trial court erred in granting Concord's motion for summary judgment and in denying Urdiales' partial no-evidence motion for summary judgment for three reasons:

- his negligence claims were not barred by the Texas Workers' Compensation Act and were based on Concord's responsibility for the employment of an unfit, dangerous, or unqualified employee;
- his intentional tort claims were viable under a respondeat superior theory; and
- his retaliation claim was based on his participation in a protected activity.

He also complains about two other actions of the trial court unrelated to the summary judgment. First he claims all of the trial court's orders are void and unenforceable because the trial court recused herself after signing them. Then he argues that the trial court erred in severing the claims against Concord from the claims against Cantu.

### C. THE TRIAL COURT'S RECUSAL

■ If Urdiales' argument regarding recusal is correct, the judge would not have been authorized to sign the summary judgment orders. As a result we will address that issue first. Urdiales also contends that the trial judge's orders granting Concord's summary judgment and severance motions are void and unenforceable because she recused herself from the case on her own motion after signing the orders. He asserts that if the judge had reasons to recuse herself after granting the motions, those same reasons existed prior to granting them, and therefore fairness and equity demand that we reverse and remand for trial. We do not accept the premise of this argument, nor does the recusal rule incorporate this type of reasoning. *See* TEX.R. CIV. P. 18a. When a judge voluntarily recuses herself, the rule does not require that all prior orders must be set aside. In fact, the rule states that a judge who recuses herself "shall make no *further* orders and shall take no *further* action in the case except for good cause stated in the order in which such action is taken." TEX.R. CIV. P. 18a(c) (emphasis added).

In addition, a more fundamental problem with Urdiales' argument exists. He points to no evidence showing that the judge was biased or otherwise should be recused or that any prior rulings were tainted—other than to argue that they must have been tainted because the judge decided to recuse herself. The record does not reveal why the judge recused herself. In addition, as we explain later in the opinion, we have reviewed at least two rulings and held that they were appropri-

ate. We cannot speculate on the reason for her voluntary recusal. Having nothing to show whether or why the judge met the grounds for recusal, we cannot conclude that all prior rulings must be set aside. *See* TEX.R. CIV. P. 18b(2) (enumerating grounds for recusal). For these reasons, we overrule this issue.

### D. THE SUMMARY JUDGMENT ISSUES

#### 1. The Negligence Claims and the Personal Animosity Exception.

■ We next turn to the summary judgment issues. Concord's motion for summary judgment argued that Urdiales' negligence claims were barred by the Workers' Compensation Act, which generally is the exclusive remedy when employees sustain certain injuries while working. *See* TEX. LAB.CODE ANN. § 408.001 (Vernon 1996); *Walls Reg'l Hosp. v. Bomar*, 9 S.W.3d 805, 806 (Tex.1999).

On appeal, Urdiales does not dispute that he was covered by the Workers' Compensation Act or that he was acting in the course and scope of his employment. But, he claims an exception applies to his negligence claims so that they are exempt from the Act. He claims his injuries "arose out of an act of a third person intended to injure the employee because of a personal reason and not directed at the employee as an employee or because of the employment." TEX. LAB.CODE ANN. § 406.032 (Vernon 1996). So, Urdiales argues that Cantu did not assault him because of work; Cantu assaulted him because of personal animosity unrelated to work. As we discuss below, the record does not support Urdiales' claim. But before we consider the evidence, we will review what the Texas Supreme Court has said about the personal animosity exception.

The Supreme Court addressed this issue in *Walls Regional Hospital v. Bomar*, 9

S.W.3d at 805–08. There, the Court explained the following:

> The Worker's Compensation Act provides the exclusive remedy for employees' injuries sustained in the course of their employment, at least if the injuries are compensable under the Act. Some injuries are not compensable, among them one that "arose out of an act of a third person intended to injure the employee because of a personal reason and not directed at the employee as an employee or because of the employment"— the so-called "personal animosity exception." We explained in *Nasser v. Security Insurance Co.* that
>
>> the purpose of the "personal animosity" exception is to exclude from coverage of the Act those injuries resulting from a dispute which has been transported into the place of employment from the injured employee's private or domestic life, at least where the animosity is not exacerbated by the employment. Whenever conditions attached to the place of employment or otherwise incident to the employment are factors in a catastrophic combination, the consequent injury arises out of the employment.

*Id.* at 806–07 (citations omitted).

*Nasser* and *Bomar* are both good examples of how narrow the personal animosity exception is. In *Nasser*, a restaurant manager was stabbed by a customer's jealous boyfriend. The personal animosity exception did not apply, and thus the manager was entitled to compensation benefits, because his duties included interaction with the customers. *Nasser v. Sec. Ins. Co.*, 724 S.W.2d 17, 19 (Tex.1987). Likewise, the exception did not apply in *Bomar*. There, two nurses alleged that they were sexually harassed at work by one of the doctors. In reviewing the case, the court noted that "all the incidents de-

scribed in the summary judgment record occurred while plaintiffs were doing their job and Boyett was doing his." *Id.* at 807. And, the court pointed out that the nurses did not contend that the doctor ever accosted them privately outside the hospital or that he came to the hospital because they were there. *Id.* The *Bomar* comments are especially relevant here.

Like the nurses in *Bomar*, Urdiales identifies no personal dispute or animosity that motivated Cantu to assault him. He also does not dispute that the fight with Cantu occurred after Cantu confronted him about being late from his lunch break. In fact, he alleges this fact throughout his first amended petition and in his affidavit in response to Concord's motion for summary judgment. He also does not challenge the sworn statement of a Concord representative that when Cantu hit Urdiales, Urdiales "had just returned from lunch and was having a conversation with Alfredo Cantu regarding his tardy return. . . ." In short, as in *Bomar*, nothing in the record shows that Cantu attacked him because of an event or a relationship outside of work.

We find Concord demonstrated as a matter of law that Cantu's dispute with Urdiales was directed to Urdiales as an employee and arose from his employment.[1] Therefore, the personal animosity exception to the Workers' Compensation Act does not apply, and we overrule Urdiales' complaint that it does apply.

Having found that the "personal animosity" exception to the Workers' Compensation Act does not apply here, all of Urdiales' negligence claims are barred; the Workers' Compensation Act is Urdiales' exclusive remedy for them. We also overrule his contention that summary judgment was improper because the gravamen of the negligence claims was Concord's negligence in hiring, training, entrustment, retention, and supervision of Cantu. This was addressed in *Bomar* where the Court held that the Act barred these negligence-based claims. *Bomar*, 9 S.W.3d at 806–08 (upholding summary judgment on nurses' claims against hospital for failing to provide a safe workplace, negligent hiring, and negligent credentialing of doctor because Workers' Compensation Act provided exclusive remedy for sexual harassment occurring at hospital).

### 2. The Intentional Tort Claims and Respondeat Superior.

■■■ Urdiales also asserts that summary judgment was improper on his intentional tort claims because Cantu's intentional acts should be imputed to Concord under a theory of respondeat superior. We assume he is arguing that, if Concord is liable under respondeat superior law, Concord must pay, even though Urdiales did not opt out of worker's compensation coverage.[2] Earlier we discussed one ex-

---

1. As additional support, Urdiales points to (1) a statement by Thompson that "[w]e had told Richard no [sic] to say anything to anyone" and (2) Concord's failure to present evidence that it notified the Texas Workers' Compensation Commission or its insurance agent of Urdiales' injury *in accordance with section 409.005 of the Act.* However, we disagree that the statement raises a fact issue on personal animosity outside of work, and Urdiales does not explain why section 409.005 is relevant or even applies here. *See* Tex. Lab.Code Ann. § 409.005(a) ("An employer shall report to the employee's insurance carrier if: (1) an injury results in the absence of an employee of that employer from work for more than one day; or (2) an employee of the employer notifies that employer of an occupational disease under Section 409.001.").

2. *See* Tex. Lab.Code Ann. § 406.034 (an employee who desires to retain common-law right of action against employer must notify employer within five days of employment or within five days of receiving notice that employer has obtained workers' compensation

ception to the Act's coverage—the "personal animosity" exception. This issue implicates another exception, the "intentional tort" exception.[3] Under that exception, an employer can, under certain circumstances, be sued at common law for its own intentional torts, even though it provides insurance under the Act.

Again, as with the personal animosity exception, we have guidance from the Texas Supreme Court on this issue. In *Medina v. Herrera,* the Court discussed the intentional tort exception and discussed when an employer can be held liable for its employee's intentional act. *See Medina v. Herrera,* 927 S.W.2d 597, 601 (Tex.1996). There, like here, one employee attacked another employee while they were both at work. Medina was injured in the attack as Urdiales was here. There, like here, Medina was covered by workers' compensation. Even though the Court stated it would not resolve the issue, it spent some time discussing when an employer should be held liable for the intentional tort of its employee.

It cited to a court of appeals opinion and to a workers' compensation treatise, both of which concluded that the intentional tort exception to the workers' compensation statute

> should apply to corporate employers only when the "assailant is, by virtue of control or ownership, in effect the alter ego of the corporation," or where the corporate employer specifically authorizes the assault. 2A LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 68.00, 68.21 (1990). The mere fact that an employer may be liable for conduct under a theory of respondeat superior, according to Professor Larson, should not impute the conduct itself to the employer so as to trigger the exception from workers' compensation coverage. *Id.* Likewise, the mere fact that the tortfeasor holds a supervisory position over the claimant should not trigger the exception. *Id.* § 68.22.

*Id.* at 601.

This conclusion makes sense. Setting aside the specific issue here for a moment, generally, the intentional injury exception has always been narrowly construed. *See Reed Tool Co. v. Copelin,* 689 S.W.2d 404, 406 (Tex.1985). "An injury caused by willful negligence or willful gross negligence is not an intentional injury necessary to avoid the effect of the Workers' Compensation Act." *Castleberry v. Goolsby Bldg. Corp.,* 617 S.W.2d 665, 666 (Tex.1981). "Falling within the intentional injury exception are direct assaults by the employer on an employee." *Copelin,* 689 S.W.2d at 406. Mere negligence or willful negligence will not suffice because the specific intent to inflict injury is lacking. *Id.* "Intent" means "'the actor

coverage); *id.* § 408.001 (recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage).

**3.** Urdiales has cited two respondeat superior cases in support of this claim. *See Houston Transit Co. v. Felder,* 146 Tex. 428, 208 S.W.2d 880, 881 (1948); *Dieter v. Baker Serv. Tools,* 739 S.W.2d 405, 407 (Tex.App.-Corpus Christi 1987, writ denied). But neither involves workers' compensation. As a result, they do not address the real issue; that is, even if respondeat superior law supports the

employer's liability, does an exception to the Workers' Compensation Act apply to allow recovery? For this reason, we find them irrelevant to our inquiry. He also refers to *Prescott v. CSPH, Inc.* 878 S.W.2d 692 (Tex. App.-Amarillo 1994, writ denied), for the burden of proof. *Prescott* does involve a workers' compensation claim and does not support Urdiales' position. *See id.* at 695 (an employer could not be liable under intentional tort exception because there was no evidence that employer intended to injure plaintiff by hiring employee).

desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to result from it.' " *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 8A (1965)); *see also Prescott,* 878 S.W.2d at 695.

The *Copelin* court explained that a narrow interpretation was appropriate. *See Copelin,* 689 S.W.2d at 407. A broader interpretation of the exception would work against the exclusive remedy provision of the workers' compensation statute; that provision is a vital element of the statute.

> The Act established a system of liability without fault. In exchange, the employee had to give up certain elements of damage recoverable under common law negligence. The system balances the advantage to employers of immunity from negligence and potentially larger recovery in common law actions against the advantage to employees of relatively swift and certain compensation without proof of fault.... The continued effectiveness of the worker's compensation scheme depends on the continued ability to spread the risk of such losses. If employers are required to provide not only worker's compensation but also to defend and pay for accidental injuries, their ability to spread the risk through reasonable insurance premiums is threatened, and the balance of advantage and detriment would be significantly disturbed.

*Id.*

Although the court was referring to negligence claims, even willful negligence claims, the same reasoning applies to an intentional tort as we have here. It would disturb the balance the Workers' Compensation Act achieved if we allowed an employee, injured by the intentional tort of a co-employee, to sue and recover from their employer simply because the tort was committed (1) at work (2) by an employee of the company. Something more must be present to bring the case within the intentional injury exception. *See Medina,* 927 S.W.2d at 601; *see also Prescott,* 878 S.W.2d at 695 (intentional tort exception is narrow; for employer to be held liable for employee's act, employer must have hired employee intending that employee injure another). For these reasons, we overrule Urdiales' claims based on respondeat superior.

### 3. Participation in a Protected Activity.

 We now turn to Urdiales' complaint that the trial court erred in granting Concord's motion for summary judgment and in denying his partial no-evidence summary judgment motion on his retaliation claim, which was based on his allegation that he participated in a protected activity under Texas Labor Code section 21.055. Specifically, he contends that Concord terminated his employment in violation of the Code when it fired him for filing this lawsuit against it. Moreover, Urdiales contends that Concord's invocation of the "at-will" doctrine is a pretext for the unlawful retaliation. However, Chapter 21 of the Texas Labor Code authorizes a cause of action for retaliation only when the employer retaliates or discriminates on the basis of race, color, disability, religion, sex, national origin, or age. *See* TEX. LAB.CODE ANN. §§ 21.051, 21.055; *see also* TEX. LAB. CODE ANN. § 21.001 (general purposes of chapter). Nothing in Chapter 21 authorizes Urdiales to assert a retaliation claim under section 21.55 based on the conduct alleged—filing a lawsuit against Concord. Additionally, Urdiales does not dispute that he was an at-will employee. In the absence of an applicable statutory or judicially-created exception, an at-will employee may be terminated for a good reason, a bad reason, or no reason. *See Currey v. Lone Star Steel Co.,* 676 S.W.2d 205, 212–

13 (Tex.App.-Fort Worth 1984, no writ) (affirming summary judgment dismissing wrongful termination claim of at-will employee fired after filing lawsuit against employer). We overrule this issue.

### E. THE SEVERANCE OF CONCORD'S CLAIMS

Finally, Urdiales contends the trial court erred in severing his claims. Rule 41 of the Texas Rules of Civil Procedure provides in part that "[a]ny claim against a party may be severed and proceeded with separately." This rule grants the trial court broad discretion in the matter of severance and consolidation of causes. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex.1990). For severance to be proper, (1) the controversy must involve more than one cause of action, (2) the severed cause must be one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim must not be so interwoven with the remaining action that they involve the same facts and issues. The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience. *Id.*

In support of this issue, Urdiales merely states in a conclusory fashion that the claims should not have been severed because they involve the same underlying factual allegations and evidence. This is not enough to demonstrate an abuse of discretion. The trial court granted summary judgment on all of Urdiales' claims against Concord; therefore, there was no reason for Concord to remain in the suit. Severance and final judgment for Concord in this circumstance was appropriate.

We affirm the trial court's judgment.