

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-23-00144-CV

---

ZACHARY LONG, Appellant

V.

R.E. WATSON & ASSOCIATES, INC., Appellee

---

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-331707-22

---

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

A badly hungover, likely still-intoxicated Zachary Long and his foreman got into a morning altercation when both men were at an out-of-town jobsite for their employer, Kennedale-based R.E. Watson & Associates, Inc., which wholesales and installs glass and mirrors on large residential-construction projects.

Seeking to recover damages outside those available through the workers'-compensation system to which the company subscribed, Long asserted that Chris Reyes, the foreman, was R.E. Watson's vice principal and was acting within the course and scope of employment when he assaulted Long. The trial court granted summary judgment for the company, which Long appeals. Because the summary-judgment evidence established that Reyes was not a corporate vice principal, and because Long presented no competent evidence raising a fact issue, we will affirm.

## Factual and Procedural Background

In May 2021, Reyes was the foreman of an R.E. Watson installation crew working in the San Antonio area. Reyes reported to John Sadler, who oversaw, coordinated, and disciplined the company's installation teams. On May 4, 2021, the "San Antonio Team," which included Long, traveled to San Marcos for an apartment-construction job scheduled to begin the next day. The night they arrived, Long and another team member, Zachary Hansen, stayed out late drinking and doing drugs and were so far under the weather the next morning that they missed their ride with the team from the hotel to the jobsite.

2

After Long and Hansen walked to and caught up with the team at a nearby gas station, Long—probably still intoxicated from the previous night, as Hansen admitted he himself was—expressed his anger at having been left behind and confronted the work-truck driver whom Long blamed for not waiting for him and Hansen to come downstairs at the hotel. Reyes intervened and ended up punching Long, briefly knocking him out, after Long "bowed up on" him. After trying to get Long to calm down from his "very aggressive" behavior, Reyes put him into another company truck that was also going to the jobsite. Reyes intended for Long to "sleep it off" while the others worked and then take Long "back to the shop" after the team's work was completed that day so that Long could explain himself to "the boss."

Once the team arrived at a parking garage at the jobsite, Long confronted Reyes. The two men began punching each other, and Reyes knocked Long to the ground. Long claimed that he was rendered unconscious and left in a pool of blood and that he suffered a traumatic brain injury and concussion symptoms as a result of that second fight.

Long sued the company, alleging that Reyes had assaulted him while they were both in the course and scope of their employment and that R.E. Watson was liable for Reyes's intentional acts because (1) the assault was committed in the course and scope of Reyes's employment and (2) Reyes was R.E. Watson's vice-principal because he could hire and fire employees and directed the company's "entire business in San Marcos" at the time of the assault.

The company moved for summary judgment on no-evidence and matter-of-law grounds. In support of the latter, the company asserted that because it was a workers'-compensation subscriber, Section 408.001 of the Texas Labor Code barred Long's claims. *See* Tex. Lab. Code Ann. § 408.001(a) (providing that, for injuries sustained in the course and scope of employment by a subscribing employer, an employee's "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage"). The company argued that Reyes's actions did not fall within the intentional-injury exception and thus could not be imputed to the company because Reyes was not the company's alter ego. The company alternatively argued that even if the Labor Code did not bar Long's claims, the company still was not liable for the assault because Reyes's tortious acts were outside the course and scope of his employment. To support its no-evidence grounds, R.E. Watson asserted that there was no evidence that Reyes was acting within the course and scope of his employment, no evidence that the company breached any negligence-based duty to Long, and no evidence of causation.

According to the company's summary-judgment evidence, Reyes was not an R.E. Watson vice principal because he lacked authority to hire employees and had only limited authority to fire employees. Long's summary-judgment response was partially supported by his unsworn declaration in which he averred, in relevant part, that Reyes was "completely in charge" of the San Antonio Team, had full control over all R.E. Watson employees in San Marcos at the time, and had the power to hire and

4

fire workers. The company objected to this part of Long's declaration on the basis that it did not lay a proper predicate to establish Long's personal knowledge of Reyes's employment, duties, power, or responsibilities and was thus conclusory.[1]

The trial court granted the company's motion without stating the grounds on which it relied. The summary-judgment order dealt with the company's objections to Long's declaration this way: "the Court considered the Unsworn Declaration, and does not Sustain D's objections as a whole; the court notes this is an Unsworn Declaration (not an affidavit), and this declaration does not meet the requirements of an unsworn Declaration Under CPRC 132.001.[2] Further, the Court finds the declaration to be conclusory."

Long timely appealed.

## Issues

Long raises three issues:

1. Does the workers'-compensation bar apply if the injury is an intentional tort committed by the company's vice principal?

---

[1]The company separately objected to Long's self-diagnosis of a "traumatic brain injury" and "concussion symptoms" on the ground that he was unqualified to render a medical opinion or scientific conclusion on such matters.

[2]Contrary to this part of the trial court's order, the declaration did in fact satisfy Section 132.001 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 132.001.

2. Was the company's vice principal in the course and scope of employment at the time of the assault?

3. Is proof that a company's vice principal punched an employee and left him in a pool of blood sufficient causation evidence?

**Standard of Review**

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant that conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, we will affirm summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

## Discussion

**The workers'-compensation bar applies, and because Long's foreman was not a company vice principal, the intentional-injury exception does not apply.**

Long does not dispute that R.E. Watson was a workers'-compensation subscriber on May 5, 2021, or that he, Long, was acting within the course and scope of his employment that day. Under the workers'-compensation system, an employee injured while in the course and scope of his employment can obtain "a lower, but more certain, recovery" for his injuries, even if negligent, while an employer's exposure to "uncertain, possibly high" common-law damages is limited. *See SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 642 (Tex. 2015) (describing the legislative mechanism of the workers'-compensation act, Tex. Lab. Code Ann. §§ 401.001–.027). Effectively conceding that he would otherwise be limited to compensation under the act, Long has told us that he "did not make a claim for workers' compensation benefits, as intentional torts by an employer are not covered."

In that much, Long is correct. *See Medina v. Herrera*, 927 S.W.2d 597, 600 (Tex. 1996) (noting that "intentional torts attributable directly to an employer" are "clearly" removed from the act's coverage). But for this exception to apply, and for Long to avoid an adverse summary judgment, Reyes's conduct must be tantamount to that of R.E. Watson itself. *Id.* at 601 (though not deciding the issue, favorably discussing workers'-comp treatise concluding that for an employer to be liable for an employee's assault on a fellow employee, the assailant should be "in effect the alter ego of the

7

corporation" and that "the mere fact that the tortfeasor holds a supervisory position over the claimant should not trigger the exception" (citing 2A Larson, *The Law of Workmen's Compensation*, §§ 68.00, 68.21, 68.22 (1990))); *see also GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 617–18 (Tex. 1999) (in case involving multiple instances of workplace harassment and consequent claim for intentional infliction of emotional distress, holding that a vice principal's workplace conduct can be imputed to corporate employer); *Stewart v. Lexicon Genetics, Inc.*, 279 S.W.3d 364, 369–71 (Tex. App.—Beaumont 2009, pet. denied) (agreeing with *Medina*'s reasoning in construing workers'-comp exclusivity as "requir[ing] an act of a vice-principal for the intentional tort exception to apply"); *Urdiales v. Concord Techs. Del., Inc.*, 120 S.W.3d 400, 407 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (following *Medina*'s reasoning and holding that, where supervisor assaulted employee for being late, intentional-tort exception did not apply; for employer liability, "[s]omething more" was needed beyond simple respondeat superior theory); *cf. McDaniel v. Dindy*, 673 S.W.3d 24, 33 (Tex. App.—Fort Worth 2023, no pet.) ("Acts of lower[-]level supervisory employees who are not vice principals are not legally sufficient to support a finding of gross negligence.").

Acknowledging that the exception requires a vice principal's intentional act, Long argues that the summary-judgment record contains "more than enough evidence to find that Chris Reyes is a vice principal." We disagree.

An employee is a vice principal if he falls within one of four classes of agents: (1) corporate officers; (2) those with authority to employ, direct, and discharge employees; (3) those engaged in performing nondelegable or absolute duties of the employer; and (4) those to whom an employer has confided the management of the whole business or a department or division of the business. *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997). This case involves the second category.

R.E. Watson supported the no-alter-ego/vice-principal aspect of its traditional summary-judgment motion with evidence that included the company's owner's affidavit averring that Reyes reported to a supervisor (Sadler) who oversaw and coordinated the company's various installation teams; that Reyes had "no authority to hire employees and had very limited authority to terminate employees only if he observed employees operating in a manner that put themselves or others in jeopardy of harm"; that Reyes had never terminated an employee; and that Sadler, not Reyes, oversaw "the discipline of the employees on the various teams." Consistent with Mark Watson's affidavit, Reyes testified in his deposition—excerpts from which were part of the company's summary-judgment evidence—that after his first altercation with Long, Reyes had intended to "[t]ake him back to the shop" when the workday ended so that Long could "[e]xplain himself to the boss on what happened." The company's evidence established that Reyes was not a vice principal as a matter of law and, unless controverted, entitled the company to summary judgment.

To raise a fact issue about Reyes's status as a vice principal, Long pointed to Reyes's deposition testimony agreeing that he "had the power to fire Zach Long" and at that time "could have fired Zach Long."[3] Long also submitted his own unsworn declaration:

> At the time of the incident, Chris Reyes was the manager of the San Antonio crew. He was a shop manager. We went to San Antonio every week, and while we were there, Chris Reyes was completely in charge. The project in San Marcos (where the assaults occurred) was done by the San Antonio crew with Chris Reyes in charge. He was in full control of all of R.E. Watson & Associates, Inc.'s employees in San Marcos at the time. He had the power to hire and fire workers. He could fire workers on the spot if they violated company policy. I have seen him send workers home. He would threaten to replace workers all the time if they did not perform up to his expectations.

The company objected to parts of this passage as conclusory and speculative—including that Reyes "had the power to hire and fire workers," was a "shop manager," and was "in full control"—because Long failed to demonstrate his personal knowledge of the terms or bounds of Reyes's employment, duties, power, or responsibilities.

Conclusory statements are those that do not provide the underlying facts to support the conclusions on offer, and they are not credible. *See, e.g., Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Residential Dynamics, LLC v. Loveless*,

---

[3]That testimony is not inconsistent with Watson's description of Reyes's "very limited authority to terminate employees." In addition, Long's own summary-judgment evidence included Reyes's deposition testimony that he was "unsure" what he had "the ability to fire the employees for."

186 S.W.3d 192, 198 (Tex. App.—Fort Worth 2006, no pet.); *cf.* Tex. R. Civ. P. 166a(f) (requiring that summary-judgment affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). We recently upheld a trial court's striking portions of a summary-judgment declaration as conclusory even though the challenged statements might well have been known to the declarant at the time; "the question [was] whether the declaration *articulated* the underlying facts to support the challenged statements." *Grant v. Wind Turbine & Energy Cables Corp.*, No. 02-21-00036-CV, 2022 WL 2840142, at *4 (Tex. App.—Fort Worth July 21, 2022, no pet.) (mem. op.). We concluded that it did not:

> Even assuming that [the plaintiff] was aware of facts to support the three statements, he did not enunciate those facts in his declaration. For example, he did not support his first statement by explaining how he knew that the forklift driver was "untrained," what training the driver lacked, who said or did what in the exchange of "poor communication," how he knew that an unspecified component of the forklift had been improperly maintained, or why he believed that any of these events caused the steel beam to fall. Nor was his second statement (regarding WTEC's alleged lack of control [of his job task]) supported with any explanation of the "job task" that he was completing when he was injured, what "details of th[at] job task" WTEC allegedly lacked control over, or who—other than WTEC—he looked to for instruction for the "details of th[at] task." And his third statement was similarly lacking. By simply stating that he was "not covered under any workers compensation insurance," Grant left unaddressed the facts underlying this conclusion, i.e., what company he considered his "employer" for purposes of workers' compensation, how he gained firsthand knowledge of the company's workers' compensation coverage, why he believed himself to be outside of that company's coverage, or why he believed that the company was a nonsubscriber.

11

These three statements thus asserted bare opinions and conclusions without supporting facts, and the trial court did not abuse its discretion by striking the statements as conclusory. *See Brownlee*, 665 S.W.2d at 112 (recognizing that "[a]ffidavits consisting only of conclusions are insufficient to raise an issue of fact").

*Id.*; *see also Pulte Homes of Tex., L.P. v. Tex. Tealstone Resale, L.P.*, No. 02-16-00029-CV, 2017 WL 1738023, at \*7 (Tex. App.—Fort Worth May 4, 2017, no pet.) (mem. op.) ("[A] conclusory statement in an affidavit is not proper summary judgment proof when there are 'no facts to support the conclusion.'" (quoting *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ))).

Here, as noted, the trial court "[found Long's] declaration to be conclusory."[4] On appeal, Long asserts that the following factual statements support the declaration's conclusions that Reyes was in full control and had the power to hire and fire workers:

> The declaration is not conclusory, as it states that it is made on personal knowledge, it states where the events occurred ("We went to San Antonio every week"), it states how the declarant knows ("I have seen him send workers home"), and it states the time period when the events occurred ("He would threaten to replace workers all the time").

---

[4]Although it found the declaration conclusory, the trial court did "not [s]ustain D's objections as a whole." The company's objections to Long's declaration embraced both the "conclusory" objection to his characterization of Reyes's authority and a separate objection to Long's lack of qualifications to diagnose himself with a traumatic brain injury and concussion symptoms. We interpret the trial court's order as rejecting the company's qualification challenge to Long's description of his own injuries.

We cannot agree that these articulated facts support the underlying conclusion that Reyes could hire and fire workers. This is particularly so because, despite Long's efforts to imbue Reyes with broad *firing* authority, neither Long's declaration—beyond his bare assertion—nor any other controverting evidence says anything about Reyes's authority to *hire* employees, and the company's owner averred unequivocally that Reyes had no such authority. Vice-principal status requires such hiring power, in addition to the power to fire and direct employees. *See Hammerly Oaks*, 958 S.W.2d at 391; *see also Garrett v. Great W. Distrib. Co. of Amarillo*, 129 S.W.3d 797, 802 (Tex. App.—Amarillo 2004, pet. denied) ("Having some supervisory authority over others without the ability to hire and fire is not enough" for vice-principal status).

Because Reyes was not its vice principal, or alter ego, R.E. Watson established its entitlement to summary judgment on Long's personal-injury claims. Accordingly, we overrule his first issue, which is dispositive.

## Conclusion

Having overruled Long's dispositive first issue and thus not needing to reach his remaining issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  February 29, 2024