

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

---

## NO. 2-07-225-CV

---

VICKI PRESLEY, AS NEXT FRIEND                                        APPELLANT
OF SHAWN DAVIS, DECEASED

V.

REPUBLIC ENERGY DRILLING, L.L.C.                                     APPELLEE

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Vicki Presley, as Next Friend of her deceased son, Shawn Davis, filed this suit against her son's former employer, appellee Republic Energy Drilling, L.L.C., along with two of his former coworkers, Louis Goodman and Teddy Garland, who are not parties to this appeal. Appellee filed a motion for summary judgment, which was granted on October 30, 2006. This appeal followed.

---

[1] *See* TEX. R. APP. P. 47.4.

## Background Facts and Litigation History

Shawn worked on oil rigs for appellee and was killed on November 25, 2003 in Denton County, Texas. In her suit, filed in Tarrant County, Texas on November 21, 2005, appellant claimed that Goodman and Garland, two of appellee's employees, were responsible for Shawn's death.[2] They are both serving sentences for manslaughter convictions in connection with Shawn's death.

Before appellant filed the Tarrant County suit, on June 1, 2004, Shawn's estranged father, Jimmy Davis, filed a civil suit against appellee seeking monetary damages for Shawn's death in Dallas County, Texas. Appellant was not served with the Dallas County suit. Summary judgment was granted in appellee's favor in that suit originally on February 28, 2006, with an amended judgment on June 12, 2006.

Regardless, on March 20, 2006, appellee moved to transfer venue of the Tarrant County suit to Dallas County to consolidate it with the one filed by Jimmy. However, at the hearing on appellee's motion for summary judgment, appellee's counsel represented to the court that final summary judgment had

---

[2] Goodman attached the cat-line of the drilling rig to a "derrick belt" around Shawn's waist, and it became tangled in the rig's equipment causing Shawn to fall into the rig; Garland was present and participated.

already been granted in the Dallas County suit so that appellee's motion to transfer would therefore be moot. The trial court agreed and denied appellee's motion to transfer.

Appellant filed an application for temporary administration of Shawn's estate in March 2006, in Denton County, Texas. The Denton County Probate Court appointed appellant temporary administrator on March 29, 2006, at which time she tried unsuccessfully to intervene in Jimmy's Dallas County suit.[3]

Ultimately, on August 2, 2006, appellee moved for summary judgment in the Tarrant County suit. The trial court held a hearing on appellee's traditional 166a(c) motion for summary judgment on September 28, 2006 and granted final summary judgment to appellee on October 30, 2006.

## Basis for Summary Judgment

Appellee sought summary judgment on several grounds. First, appellee claimed that appellant's claims were barred as a matter of law by res judicata because the same or similar claims had already been litigated to finality in the Dallas County lawsuit. Second, appellee asserted there were no questions of material fact with respect to appellee's liability because appellee was not

---

[3] Citing *Malone v. Hampton,* 182 S.W.3d 465, 468 (Tex. App.—Dallas 2006, no pet.), appellant "passed" on appearing at her motion for new trial hearing, apparently believing the trial court had lost jurisdiction to rule on her motion and attempt to intervene.

3

responsible under a theory of vicarious liability for the intentional torts, if any, committed by its employees against Shawn. Lastly, as Shawn's employer and as a subscriber under the Texas Workers' Compensation Act (TWCA), appellee claimed that a survival action based upon negligence or gross negligence is limited to the exclusive remedies under the TWCA.

## Issue Presented

On appeal, appellant challenges the propriety of the trial court's grant of the summary judgment in appellee's favor. Within this single issue we will address (1) whether Jimmy had standing to bring suit on behalf of Shawn's estate in Dallas County, thereby barring the action below by the doctrines of res judicata and collateral estoppel; (2) whether appellee is protected by the exclusive remedy provisions of the TWCA with respect to the types of claims asserted against appellee by appellant; and (3) whether appellee was vicariously liable for any acts of its codefendants below because they were vice principals of appellee.

## Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211,

4

215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.,* 73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). But we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin*, 589 S.W.2d at 678.

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *IHS Cedars*

5

*Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).  Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.  *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).  To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.  *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex. 1996).

**Applicable Law**

**Is Shawn's Estate Bound by the Dallas Suit? (Standing to Bring Suit**)

Generally, only the personal representative of an estate may bring a survival cause of action. *Shepherd v. Ledford,* 962 S.W.2d 28, 31 (Tex. 1998) (citing *Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex. 1971), and Tex. Civ. Prac. & Rem. Code Ann. §§ 71.021(b), 71.004(b) (Vernon 2008)).  However, the Texas Supreme Court also observed in *Shepherd* that an heir at law could pursue a survival action within the four-year period allowed for administration

6

proceedings if such heir proved that no administration was pending and that none was necessary. *Id*. at 31–32 (citing *Frazier*, 472 S.W.2d at 752).

Shawn died intestate, single, and without children; thus, both of his parents were his only heirs. *See* TEX. PROB. CODE ANN. § 38(a)(2) (Vernon 2003). Therefore, either of his parents could have maintained the survival action as heirs or as personal representatives of his estate. His father, Jimmy, was the first to file suit in Dallas on June 1, 2004, pleading that no administration was pending and that none was necessary, in order to comport with *Shepherd*. 962 S.W.2d at 31–32. Appellant contends that Jimmy alleged that no administration was necessary but failed to *prove* no administration was necessary for Shawn's estate. Therefore, appellant contends Jimmy lacked standing to represent the estate in the Dallas County litigation and that it therefore is not binding on appellant.

In order to pursue a cause of action, one must have both standing and capacity to sue. *Lorentz v. Dunn,* 171 S.W.3d 854, 856 (Tex. 2005). In a survival action a decedent's estate has a justiciable interest in the controversy to confer standing but lacks capacity to sue. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 850 (Tex. 2005). Only if the heirs prove both that no administration is pending and that none is necessary have the courts allowed them to maintain a survival suit during the four year period allowed for

7

administration of an estate. *Shepherd*, 962 S.W.2d at 31–32. Appellant contends that Jimmy failed to prove standing to bring his Dallas County suit, thereby resulting in a judgment that is not binding on Shawn's estate or appellant, as its personal representative. Furthermore, appellant argues that neither res judicata nor collateral estoppel can bar Shawn's estate from pursuing this action because it was not a party to the Dallas County action.[4]

Appellant raises her complaint primarily as a challenge to Jimmy's *standing* to bring the Dallas County lawsuit when in reality her complaint is one of *capacity*. *See Lovato,* 171 S.W.3d at 850–51 n.3. Appellant concedes Jimmy was an heir and that he brought suit within the four-year limitations period; therefore, he had standing. *See Shepherd*, 962 S.W.2d at 31–32. Appellant complains only that he failed to prove that no administration was necessary in the Dallas County lawsuit. However, whether he did or did not prove that an administration was unnecessary is an issue of capacity, not standing. *Lovato,* 171 S.W.3d at 848–49. Without standing, a court lacks jurisdiction, which may be raised at any time. *Id.* at 849. But capacity, which relates to the legal authority to sue or be sued, is an issue that should be raised by a verified pleading in the trial court, not by a collateral attack in a separate

---

[4] Appellant was never named or served as a party in the Dallas County cause of action.

proceeding. TEX. R. CIV. P. 93(1)-(2); *Lovato,* 171 S.W.3d at 849; *Intracare Hosp. N. v. Campbell,* 222 S.W.3d 790, 796 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Armes v. Thompson*, 222 S.W.3d 79, 82 (Tex. App.—Eastland 2006, no pet.). In this regard, appellant concedes she had knowledge of the Dallas County lawsuit before the summary judgment was granted. And while her motion to intervene and her motion for new trial may have been filed late, i.e., more than thirty days after the February 28, 2006 original summary judgment date, we cannot tell from this record because it does not include file-marked copies of these pleadings. *See* TEX. R. CIV. P. 329b(a); *Malone,* 182 S.W.3d at 468. Furthermore, because the Dallas court signed an "Order of Final Judgment" vacating the February 28, 2006 order and re-granted a final summary judgment to appellee on June 12, 2006, this would indicate that the earlier February 28 order was interlocutory in some manner so that the trial court had indeed retained jurisdiction between February and June, thus giving appellant an opportunity to have intervened and challenged Jimmy's capacity by a motion for new trial instead of by this collateral attack.

Therefore, we conclude and hold that appellant's attack on Jimmy's capacity to represent Shawn's estate in the Dallas County litigation is an invalid collateral attack on that judgment. Because this attack on Jimmy's capacity

9

was not made by verified pleading in the Dallas County suit, it comes too late; therefore, we overrule this portion of appellant's issue.

**Is Appellee Protected by the Exclusive Remedy Provisions of the TWCA?**

It is undisputed that appellee was an employer under the TWCA and maintained workers' compensation insurance in accordance with the TWCA. Additionally, Shawn was an employee of appellee at the time of his death. If an employee is injured or killed due to the negligence or gross negligence of an insured employer, the TWCA bars suits based upon such acts of negligence or gross negligence except for exemplary damages in death cases. TEX. LAB. CODE ANN. § 408.001(a)–(b) (Vernon 2006); *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex. 1981). Appellant contends, however, that the incident resulting in Shawn's death falls within the "intentional injury exception" to the TWCA so that appellant is not limited to the remedies of the TWCA.

**Does the Intentional Injury Exception of the TWCA Apply?**

The supreme court has held that intentional injuries committed by the employer or at the specific direction of a corporate employer fit within the intentional injury exception. *See Medina v. Herrera,* 927 S.W.2d 597, 600 (Tex. 1996). In other words, the TWCA does not apply, and therefore provides no coverage, for intentional torts attributable directly to an employer. *Id.* at 600–01. But, according to appellee, *Medina* also requires an intentionally

10

injured employee to show that the employer ordered or directed the intentional injury to occur; otherwise, the TWCA provides the exclusive remedy. *Id.* at 601; *see* TEX. LAB. CODE ANN. § 406.031(a) (Vernon 2006) (applying TWCA to intentional assaults committed by fellow workers if the dispute is employment-related). Appellee contends appellant failed to present at least a scintilla of evidence that the conduct toward Shawn was either caused by personal animosity or ordered by appellee. In response, appellant says *Medina* does not apply to this case because it violates the open courts provision of the Texas Constitution[5] and because it has never been cited by another court and therefore has no precedential value. We disagree.

*Medina* is a Texas Supreme Court opinion. *Id.* at 602. It has never been overruled, so it is the law of the State of Texas and retains its precedential value. *See generally Lubbock County, Tex. v. Trammel's Lubbock Bail Bonds,* 80 S.W.3d 580, 585 (Tex. 2002); *Am. Nat'l Ins. Co. v. Int'l Bus. Mach. Corp.,* 933 S.W.2d 685, 688 (Tex. App.—San Antonio 1996, writ denied). Accordingly, we may look to *Medina* as controlling precedent.

---

[5] Appellant provides no explanation or discussion for that assertion, so we will not address it here. *See* TEX. R. APP. P. 38.1(h); *McClure v. Denham,* 162 S.W.3d 346, 349 (Tex. App.—Fort Worth 2005, no pet.).

11

The intentional injury exception to the TWCA does not apply to Goodman's and Garland's acts; their acts were not intentional acts of the employer within the meaning of TWCA. According to *Reed Tool*, a case cited by both parties, "common law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury." *Reed Tool Co. v. Copelin,* 689 S.W.2d 404, 406 (Tex. 1985). There was no evidence that Goodman and Garland intended the result of their acts, i.e., Shawn's death, and there was no evidence that appellee ordered, approved, or requested that Shawn be hazed in any manner.

Appellant contends in her brief that the focus of intent should be on the intent to attach Shawn to the cat-line, not the intent to harm Shawn, that controls. Again, *Reed Tool* provides us with some guidance on the meaning of "intentional injury" within the meaning of the TWCA. *Id.* at 407. "The fundamental difference between negligent injury, or even grossly negligent injury, and intentional injury is the specific intent to inflict injury." *Id*. at 406. So it is the intent to injure or the desire "to bring about the physical results" that becomes the focus of the "intent" inquiry, not just the mere physical act that causes the injury. *Id.* (quoting *Bazley v. Tortorich*, 397 So.2d 475, 482

12

(La. 1981)). In other words, the focus is on whether the actor desired to cause the consequences of his act or believed that the consequences were substantially certain to result from it. *Id.* at 407.

Here, all the evidence showed that Goodman and Garland intended only to haze or pull a prank on Shawn. There was no evidence of intent to kill or injure him. Goodman was convicted of manslaughter, which is defined as recklessly causing the death of another. TEX. PENAL CODE ANN. § 19.04(a) (Vernon 2003). "Reckless" is defined as "aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c). "Reckless" is a lower standard than "substantially certain" or "desired to cause the result" and therefore does not rise to the level of intentional. We therefore conclude and hold that the trial court correctly concluded that the intentional injury exception to the TWCA did not apply. We overrule this portion of appellant's sole issue.

**Were Goodman and Garland Vice Principals of Appellee?**

Appellant also argues that appellee was liable for the acts of its workers, in particular, Goodman, because his conduct was intentional and he was a vice principal of appellee. Appellant contends that Goodman was a vice principal because he had the authority to hire and fire employees, and that he had, in

13

fact, hired Shawn. Appellant contends she raised a fact issue on whether Goodman was a vice principal.

Joe Presley, Shawn's stepfather, testified by affidavit that Goodman had hired Shawn, that he, Joe, had been in the oil field industry for over thirty years, and that as a driller he has always had the authority to hire and fire the members of his crews. He also stated that he was there when Goodman interviewed and hired Shawn for the job.

Conversely, appellee's summary judgment evidence showed that Goodman was the driller on Rig #2 and that he reported to the tool pusher of the rig, Lonnie Lovern. Garland was a chain hand on the rig and reported to Goodman. Furthermore, according to the affidavit testimony of Robert Lindsay, appellee's president, neither of these employees had authority to hire anyone, neither had freedom in deciding their job duties, and neither was responsible for any nondelegable duties. Neither was a corporate officer or a manager of the drilling rig in question. Lindsay did not deny Goodman's authority to fire employees. However, Lindsay's evidence was specific as to appellee, whereas Joe Presley's evidence was general and conclusory in nature as being applicable to the oil and gas industry in general, except as to his claim of being present when Goodman hired Shawn. *See* TEX. R. CIV. P. 166a(f); *Souder v. Cannon,* 235 S.W.3d 841, 849 (Tex. App.—Fort Worth 2007, no pet.). While this may

14

create a fact question on whether Goodman offered the job to Shawn, it is insufficient to tell us whether Goodman actually had the *authority* to hire Shawn, which is directly disputed by Lindsay's affidavit. Moreover, merely having authority to hire and fire employees is insufficient, alone, to make one a vice principal. *See Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397, 406 (1934), *disapproved of on other grounds by Wright v. Gifford-Hill & Co.,* 725 S.W.2d 712, 714 (Tex. 1987); *Johnson v. Scott Fetzer Co.*, 124 S.W.3d 257, 267–68 (Tex. App.—Fort Worth 2003, pet. denied). We overrule this portion of appellant's sole issue.

**Is Appellee Liable under *Respondeat Superior?***

Appellant also contends that because the intentional tort was committed in the course and scope of employment, or the intentional tort was connected with and immediately grew out of that employment, the liability associated with it can be imputed to appellee under the theory of respondeat superior, citing *GTE Sw., Inc. v. Bruce,* 998 S.W.2d 605, 617–18 (Tex. 1999).

According to the doctrine of respondeat superior, an employer can be held responsible for the negligent acts of its employees acting within the course and scope of their employment, even if the employer has personally committed no wrong. *Green v. Ransor, Inc.*, 175 S.W.3d 513, 516 (Tex. App.—Fort Worth 2005, no pet.) (citing *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945,

15

947 (Tex. 1998)). This is also true for intentional torts; however, these acts must be closely connected with the employee's authorized duties. *GTE*, 998 S.W.2d at 617–18. Appellant does not state, nor does the summary judgment evidence show, how Goodman's or Garland's actions in "initiating" Shawn were in any way connected with their authorized duties for appellee. We overrule this portion of appellant's sole issue.

**Does Res Judicata Require This Court to Affirm the Summary Judgment?**

Appellant contends that res judicata does not create a bar to this litigation because appellee cannot prove identity of parties between the Dallas County litigation and this litigation. Appellant contends that because Jimmy did not prove he had the capacity to bring a lawsuit on behalf of Shawn's estate in the Dallas County litigation, the estate was not a party to the Dallas County litigation and therefore is not barred from being a party to the identical causes of action being brought by appellant on the estate's behalf in the Tarrant County litigation in the trial court below. Thus, according to appellant, appellee cannot show identity of parties, one of the fundamental requisites for the application of the theory of res judicata, according to *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628, 631 (Tex. 1992).

Res judicata prevents litigation of claims that arise out of the same subject matter as previously litigated claims or that could have been litigated in

16

a prior suit. *Citizens Ins. Co. of Am. v. Daccach,* 217 S.W.3d 430, 449 (Tex. 2007). One must show a prior final judgment on the merits with identity of parties or those in privity with them. *Id.* Appellant challenges only the identity of parties prong, contending that appellee cannot show identity of parties because of the claimed "party" defect in the Dallas County case. As discussed above, however, the defect, if any, was only with Jimmy's capacity to act on behalf of Shawn's estate, not his standing to act on behalf of Shawn's estate. Because he was an heir, he had standing to enter an appearance on behalf of the estate. Thus, the estate was a party to the Dallas County litigation, and there is therefore identity of parties between the Dallas County litigation and the Tarrant County litigation. This portion of appellant's issue is overruled.

**Were There Unaddressed Causes of Action in Appellee's Motion for Summary Judgment?**

Appellant also contends that she asserted two causes of action that were not addressed by appellee in its motion for summary judgment: one based upon the criminal conduct of its employees under the Texas Civil Practices and Remedies Code section 41.005, subsections (c)(1) and (3), and one asserting a claim for intentional infliction of emotional distress, which appellant says is not covered or barred by the TWCA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.005(c)(1), (3) (Vernon 2008).

17

For a summary judgment to be final, it must dispose of all issues and parties. *Lehmann v. Har-Con Corp.,* 39 S.W.3d 191, 192–93 (Tex. 2001); *City of Beaumont v. Guillory,* 751 S.W.2d 491, 492 (Tex. 1988). Finality in the summary judgment context is determined by looking not only at the four corners of the order at issue, but also the appellate record as a whole to determine which claims were asserted, which claims were addressed, and which claims the trial court intended to address. *See Lehmann,* 39 S.W.3d at 203–04. A trial court cannot grant summary judgment except on the grounds expressly presented in the motion. *Reynolds v. Murphy,* 188 S.W.3d 252, 271 (Tex. App.—Fort Worth 2006, pet. denied) (citing *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 204 (Tex. 2002), and *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 912 (Tex. 1997)), cert. denied, 127 S. Ct. 1839 (2007). However, summary judgment may be proper when a ground asserted in a motion for summary judgment conclusively negates a common element of newly or previously pled claims or when the original motion is broad enough to encompass a newly pled claim. *Rotating Servs. Indust., Inc., v. Harris*, 245 S.W.3d 476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). This court has previously so stated this rule as to an amended petition that essentially reiterates previously pled causes of action that have already been responded to in the response to motion for summary judgment. *Fraud-Tech,*

18

*Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 387 (Tex. App.—Fort Worth 2003, pet. denied).

As to the intentional infliction of emotional distress claim, appellee moved for summary judgment on all claims asserted in appellant's original petition based upon res judicata: "[T]his Honorable Court may dismiss Plaintiff's lawsuit with prejudice merely by applying the doctrine of res judicata to Plaintiff's claims." Although appellant claimed this was insufficient and challenged this in her response to the motion for summary judgment, appellee replied by saying that there is no need to specifically address the intentional infliction of emotional distress claim because it too falls with the liability for all the other torts asserted as causes of action in appellant's pleadings: because there is no vice principal liability and no vicarious liability, there can be no liability asserted against appellee for any cause of action including intentional infliction of emotional distress. Appellee also points to the Dallas County court's judgment, which states its intent to dispose of the same claims asserted in appellant's lawsuit.

Our review of Jimmy's petition shows that it was brought for Shawn's wrongful death along with any survival claims, both on behalf of the estate and on behalf of all beneficiaries and included not only negligence claims but also any of those same such acts that were or could have been intentional.

19

Furthermore, Jimmy specifically pled for damages resulting from Shawn's mental anguish. As stated above, res judicata prevents litigation of claims that arise out of the same subject matter as previous litigated claims or that could have been litigated in the prior cause. *Daccach,* 217 S.W.3d at 449. The intentional infliction of emotional distress claim clearly arose out of the same subject matter of all the other claims and requires a mental state that we have already determined was negated. *See Rotating Servs.,* 245 S.W.3d at 487; *Daccach*, 217 S.W.3d at 449.

We overrule this portion of appellant's issue and turn to damages.

Section 41.005 of the civil practice and remedies code governs liability for exemplary damages arising from the criminal acts of others. TEX. CIV. PRAC. & REM. CODE ANN. § 41.005. A pleading for damages under section 41.005, subsections (c)(1) and (c)(3) of the civil practices and remedies code does not allege a separate cause of action but seeks to impose liability for exemplary damages under an exception to the general rule that exemplary damages resulting from a criminal act of another do not lie. *See id.; cf. Tex. Dep't of Human Servs. v. Okoli*, No. 01-07-00103-CV, 2007 WL 1844897, at * 5–6 (Tex. App.—Houston [1st. Dist.] 2007, pet. filed) (holding same as to pleading purporting to assert "claim" for damages under section 41.003 of the civil practice and remedies code). Under subsections (c)(1) and (3), an employer

20

may be liable for exemplary damages only if the employee's criminal act was authorized by the principal or if the agent was employed in a managerial capacity and was acting in the scope of employment. TEX. CIV. PRAC. & REM. CODE ANN. § 41.005(c)(1), (3). Because appellee has shown that none of the acts were authorized by appellee or within Goodman's or Garland's scope of employment, none of appellant's claims could fall within the parameters of the exceptions listed in section 41.005(c)(1) and (3). Thus, we conclude that this prayer for relief was not another cause of action and affected only the potential scope or amount of damages to which appellant might have been entitled upon any of her pled causes of action. *See id.* Therefore, we also conclude that appellee conclusively negated the prayer for exemplary damages as well. We overrule this remaining portion of appellant's issue.

**Conclusion**

Having overruled all portions of appellant's sole issue on appeal, we cannot say that the trial court erred by granting summary judgment for appellee. We therefore affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL: CAYCE, C.J.; LIVINGSTON AND MCCOY, JJ.

DELIVERED: August 29, 2008

22