# IN THE SUPREME COURT OF TEXAS

No. 18-0309

BERKEL & COMPANY CONTRACTORS, INC., PETITIONER,

v.

TYLER LEE, ET AL., RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

**Argued September 15, 2020**

JUSTICE BLAND delivered the opinion of the Court.

JUSTICE LEHRMANN and JUSTICE BUSBY did not participate in the decision.

The Texas Workers' Compensation Act is the exclusive remedy for employees who sustain nonfatal work-related injuries.[1] A narrow common-law exception exists, but the exception requires that the defendant have a specific intent to injure the plaintiff.[2] Last term, we reaffirmed this principle: to satisfy the intentional-tort exception, "the employer must believe that its actions are substantially certain to result in a particular injury to a particular employee."[3] This degree of

---

[1] TEX. LAB. CODE § 408.001(a).

[2] *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985).

[3] *Mo-Vac Serv. Co. v. Escobedo*, 603 S.W.3d 119, 130 (Tex. 2020).

specificity is required, we said, to prevent a claim for intentional injury "from devolving into a standard of exceptionally egregious gross negligence," which the Act precludes.[4]

In this suit arising under the exception to the Act, we again confirm that the substantial-certainty test established in *Reed Tool Co. v. Copelin,* 689 S.W.2d 404 (Tex. 1985), and reaffirmed last term in *Mo-Vac Service Co. v. Escobedo*, 603 S.W.3d 119 (Tex. 2020), requires that the defendant intend or know that its actions are substantially certain to injure a particular employee. The court of appeals held that the evidence in this case does not meet that level, and we agree with its conclusion. But on rehearing, it remanded the case for a new trial in the interest of justice because it adopted a new definition for intent in the workers' compensation context.

Adhering to existing precedent, we rejected that new definition in *Mo-Vac.* Because Texas law remained unchanged during the pendency of this case, and the defendant in this case objected to the improper definition of intent in the court's charge to the jury, we reverse that part of the court of appeals' judgment remanding in the interest of justice.

**I**

Skanska USA Building, Inc. was the general contractor for a commercial construction project in Houston. Respondent Tyler Lee was Skanska's lead superintendent for the project. Skanska subcontracted with petitioner Berkel & Company Contractors, Inc. to drill foundation pilings for a large office tower. Skanska required Berkel to participate in Skanska's contractor-controlled insurance program, which provided uniform workers' compensation benefits to workers on its worksite.

---

[4] *Id.*

To construct the pilings, Berkel used a crane to drill a 130-foot auger into the ground, supported by 150-foot steel rods called "leads" that kept the auger straight. The auger had a hollow shaft, through which the Berkel crew pumped concrete grout as they slowly removed the auger from the ground.

On the day of the accident, the Berkel crew began a new piling without sufficient grout to finish it, in contravention of company policy. The grout hardened while the crew waited for more grout to arrive, and the auger stuck in the ground. Berkel's foreman, Mark Stacy, instructed the crane operator, Andrew Bennett, to "bump" the auger: essentially, to rock the auger back and forth to try to free it from the hardening grout. After ten minutes of unsuccessful bumping, Stacy recommended that the operation be scuttled and restarted.

Berkel's superintendent, Chris Miller, overrode Stacy. Spewing invectives, Miller positioned himself next to the auger. He ordered Bennett to continue bumping the auger while pressuring the crane's hoist cable to further try to loosen it. Witnesses testified that some of the crane's rollers came off the ground, and the crane's hydraulic lines began to spray fluid. Though Bennett testified that none of the crane's alarms sounded, other crew members testified that they thought the situation was "a death trap," were worried that "[s]omething [was] going to break and hurt somebody," and prepared to protect themselves from injury. After fifteen to thirty minutes, the crane collapsed, knocking over the steel leads. Lee stood beyond the construction barrier at grade level, and one of the leads hit Lee as it fell. The lead crushed Lee's leg, ultimately requiring that it be amputated.

Lee applied for and received workers' compensation medical and disability benefits for his injuries under the contractor-controlled insurance program. As a participant in the workers'

3

compensation program, medical and disability benefits are available without any determination of fault.[5] They are the exclusive remedy against an employer as defined under the Act for a covered worker who is injured on the job.[6]

Lee and his family sued Berkel for negligence and gross negligence, claiming that Berkel had waived its exclusive-remedy defense. The Lees later amended their petition to assert that Berkel, through Miller, had intentionally injured Lee. The Lees invoked the common-law intentional-injury exception to the Act this Court identified in *Middleton v. Texas Power & Light Co.*, 185 S.W. 556 (Tex. 1916). The arguments in this Court are limited to the intentional-injury exception.[7]

In the trial court, the parties disputed the definition of an "intentional" injury. Relying on established precedent, at the court's charge conference Berkel requested that the trial court define "intent" to require that a Berkel employee intended to cause, or was substantially certain that he would cause, the injury to Lee.[8] The Lees countered that for an injury to be "intentional" in the workers' compensation context, the defendant need not have a specific intent to injure, nor direct the conduct at the plaintiff, but instead need merely believe that an injury is "substantially certain to result." The Lees prevailed; the jury charge asked whether "a Berkel employee . . . believe[d] that injury was substantially certain to result from his conduct on the date in question?" The jury

---

[5] *Id.* at 128.

[6] TEX. LAB. CODE § 408.001(a).

[7] The court of appeals held that the exclusive-remedy provision of the Workers' Compensation Act barred the Lees' negligence claims. *Berkel & Co. Contractors, Inc. v. Lee*, 543 S.W.3d 288, 296 (Tex. App.—Houston [14th Dist.] 2018).

[8] Berkel further contends in this Court that the Lees also cannot prevail because the evidence does not demonstrate that Miller or any member of the Berkel crew that day was a vice-principal of the company. Because we hold that Berkel otherwise prevails, we need not address this argument.

4

answered "yes," and awarded damages to the Lees. The trial court entered judgment on the jury's verdict.

The court of appeals reversed, holding that the trial court's charge erred in asking whether a Berkel employee knew that an unspecified injury—unattached to any particular victim or any particular location—was substantially certain to result.[9] This was error, the court of appeals held, because the intentional-injury exception always has had a "specific-consequences requirement."[10] Adopting a comment from the Third Restatement, it held that the charge should have asked "whether a Berkel employee acting in the course and scope of his employment believed that his conduct was substantially certain to bring about harm to a particular victim, or to someone within a small class of potential victims within a localized area."[11] Because the answer to the question was "no"—no evidence showed that anyone at Berkel knew the lead would fall onto Lee—the court of appeals held there was legally insufficient evidence to support a finding of intentional injury.[12] The court rendered judgment for Berkel.

On rehearing, the divided panel amended its judgment and remanded the case for another trial in the interest of justice. Because one part of its holding—its localized-area gloss—was new and "no appellate decision had examined in detail the requirements of the substantial-certainty test" in the context of a jury charge, the court remanded to allow "an opportunity to establish and present evidence under our clarified standard."[13] Justice Donovan dissented, observing that the

---

[9] 543 S.W.3d at 308.

[10] *Id.* at 300–01.

[11] *Id.* at 301.

[12] *Id.* at 304–08.

[13] *Id.* at 308.

court of appeals had applied well-established existing precedent, set forth more than 30 years ago in *Reed Tool Co.*[14]

Berkel petitioned for review, seeking reversal of the court of appeals' remand order. Lee cross-appealed, seeking reinstatement of the jury's verdict, or alternatively, that we affirm the remand. We granted review on motion for rehearing, shortly after deciding *Mo-Vac*, another intentional-injury case.

## II

The Texas Workers' Compensation Act is the exclusive remedy for a covered employee who seeks recompense for injury claims against the employer.[15] It does not permit a suit for an employer's grossly negligent conduct unless that conduct causes a fatal injury.[16] As we explained in *Mo-Vac*, a central purpose of workers' compensation is to promote certainty and speed in resolving work-related injury claims.[17] Workers' compensation insurance provides medical and disability benefits without regard to the fault of either the injured worker or the employer.[18] The court of appeals held that Berkel was Lee's co-employer and thus Lee's injury claim fell within the exclusive-remedy provision of the Act. As a co-employer, the court of appeals determined that Berkel cannot be sued for negligence or gross negligence. The Lees do not challenge that aspect of the court of appeals' holding.

---

[14] *Id.* at 309 (Donovan, J., dissenting) (citing *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 407 (Tex. 1985)).

[15] TEX. LAB. CODE § 408.001(a).

[16] *Id.* at § 408.001(b).

[17] *Mo-Vac v. Escobedo*, 603 S.W.3d 119, 128 (Tex. 2020).

[18] *Id.* at 124.

When an employer commits an intentional tort, however, a common-law exception exists.[19] Therefore, to recover against Berkel, the Lees must prove that Berkel intentionally caused Lee's injury. We agree with the court of appeals that the Lees did not adduce legally sufficient evidence to demonstrate that a Berkel crew member intended to injure Lee, and that the trial court's jury charge did not properly define intent.

In reviewing the legal sufficiency of the evidence, we evaluate "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review."[20] Because Berkel properly preserved error by objecting to the trial court's intentional-injury charge, we evaluate the sufficiency of the evidence against the charge the trial court should have given.[21]

**A**

As they did in the trial court, the parties dispute the proper definition of an intentional injury. We recently examined that definition in *Mo-Vac*, and our holding in that case controls the outcome here. In *Mo-Vac*, we upheld the trial court's summary judgment in favor of the employer because the evidence failed to raise a fact issue as to intent.[22] To satisfy the intentional-tort exception, "the employer must believe that its actions are substantially certain to result in a particular injury to a particular employee, not merely highly likely to increase overall risks to employees in the workplace."[23]

---

[19] *Medina v. Herrera*, 927 S.W.2d 597, 600 (Tex. 1996).

[20] *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

[21] *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002).

[22] 603 S.W.3d at 132.

[23] *Id.* at 130.

7

Over Berkel's objection, the court's charge in this case did not properly define intent. Instead of asking whether a Berkel employee specifically intended that his conduct injure Lee, or knew with substantial certainty that his conduct would injure Lee, the jury charge asked whether a Berkel employee believed "injury was substantially certain to result." The court of appeals correctly held that the trial court's submission did not accurately reflect Texas law.

In reviewing the verdict, however, the court of appeals adopted a localized-area test, implicitly defining intent to include knowledge of dangerous conditions that will eventually cause an injury, if that knowledge is specific to a particular time and small class of individuals. As we recounted in *Mo-Vac*, our Court "effectively rejected" that broader definition of intent and the localized-area test for intentional injury more than 30 years ago in *Reed Tool*, in which we held that the employer must have knowledge that the conduct at issue will injure a particular employee.[24] From *Reed Tool* on, Texas has held that dangerous conduct, standing alone, does not support a finding of intent.[25] Rather, an employer must "believe[] his conduct is substantially certain to cause *the* injury."[26]

The intentional-injury exception to the Workers' Compensation Act originates in the Texas Constitution's open courts guarantee, and we have held that the Legislature effectively adopted

---

[24] *Id.* at 128 (citing *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 407 (Tex. 1985)). The Third Restatement recognizes that a conflict exists among jurisdictions as to whether an employer intentionally causes injury in the workers' compensation context when "the employer has created a very dangerous job-site condition that the employer knows will eventually bring about an employee injury." RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 1 cmt. a. The Restatement's localized-area limitation adopted by the court of appeals applies to jurisdictions that embrace a broader definition of substantial certainty than the narrow common-law exception to the Act that Texas has adopted. The limitation winnows "eventual employee injury" to injuries that comprise "a small number of identifiable employees during a relatively limited period of time." *Id.*, § 1 cmt. e. But to embrace this "limitation" in Texas would expand substantial certainty beyond what we historically have recognized as an intentional injury in the workers' compensation context.

[25] *Reed Tool*, 689 S.W.2d at 408.

[26] *Id.* at 407 (emphasis added).

8

the exception when it revised the Act in 1989.[27]  The parties do not contend that the Act is rendered unconstitutional without broadening the meaning of intent to injure as existing precedent has defined it.  In tacitly accepting the intentional-injury exception, the Legislature chose not to allow suits for nonfatal injuries caused by the type of gross negligence that the evidence presents here.

The court of appeals correctly concluded that the evidence is legally insufficient to support a finding that Berkel intended to cause Lee's injury.  Based on the evidence, a properly instructed jury could have concluded that Miller deliberately ignored the risk of a collapse.  But no evidence supports an inference that Miller—described by a witness as standing "where everything was falling"—believed the equipment would break and collapse, and that it was destined to collapse on top of Lee, who stood beyond the construction barricade at grade level.

As the court of appeals observed, there is no evidence that Miller knew Lee's location; Miller was below-grade.[28]  While one crew member testified that he "thought [Miller's] operation was exposing [the crew] to danger," none predicted what form that danger would take or the injury that it would cause.  As another crew member testified: "I knew—I knew something—something has got to give. […] A cable is going to break.  The boom is going to break.  The auger is going to break.  The bolt is going to pull out, you know, anything."  He could predict that "someone might be injured," but not who or how or when.  This testimony confirms the substantial *uncertainty* that Miller's actions would cause a lead to crush Lee's leg.

---

[27] *Medina v. Herrera*, 927 S.W.2d 597, 600 (Tex. 1996) (citing *Middleton v. Texas Power & Light Co.*, 185 S.W. 556, 560 (Tex. 1916)).

[28] *Berkel & Co. Contractors, Inc. v. Lee*, 543 S.W.3d 288, 305 (Tex. App.—Houston [14th Dist.] 2018).

**B**

In this Court, the Lees do not challenge the conclusion that no evidence suggests that a Berkel employee knew that he would injure Lee. They ask instead that we apply the doctrine of transferred intent to support the jury's finding. They direct us to Prosser and Keeton:

> The actor who fires a bullet into a dense crowd may fervently pray that the bullet will hit no one, but if the actor knows that it is unavoidable that the bullet will hit someone, the actor intends that consequence.

W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 8, p. 35 (5th ed. 1984). Though the evidence might not show that a Berkel employee knew that he would injure Lee, they posit, it surely suggests that one knew that he would injure *someone*.

Assuming that transferred intent may establish an intent to injure, there is not legally sufficient evidence of it here.[29] Though the evidence suggests that injury could result because Miller ordered the operator to overstress the auger and crane, no evidence suggests anyone knew how or whom the crane would injure. About ten people were within the fall radius of the crane's boom—an area about the size of two football fields. There is no evidence that Miller knew or believed that his orders to continue attempting to free the auger would *unavoidably* result in the crane or the leads collapsing atop someone. No evidence exists that Miller or another Berkel crew member believed his actions were substantially certain to injure any particular person.

---

[29] Traditionally, transferred intent is more akin to a scenario we discussed in *Mo-Vac*:

> The second *Restatement* uses a bomb hypothetical to illustrate the substantial-certainty test for intent. RESTATEMENT (SECOND) OF TORTS § 8A cmt. b, illus. 1 (1965) ("A throws a bomb into B's office for the purpose of killing B. A knows that C, B's stenographer, is in the office. A has no desire to injure C, but knows that his act is substantially certain to do so. C is injured by the explosion. A is subject to liability to C for an intentional tort."). We think the better category for this example is purpose because the actor deliberately intended the harmful consequence to those present in the room.

603 S.W.3d at 129 n.53. For the purposes of this case, this is a distinction without difference, as there is no evidence that Miller deliberately intended a harmful consequence to anyone.

10

Rather, the evidence shows that Miller was grossly negligent—he was aware of an extreme risk and nevertheless proceeded in complete disregard for the safety or welfare of others at the worksite.[30]  Miller ordered his crew to continue operating a crane under stress, over repeated objections from others. Miller proceeded against Berkel's own safety procedures, at risk to everyone in the fall radius of the crane and the leads. But Miller did not plan or intend for the equipment to collapse on Lee.  By his grossly negligent actions, he nonetheless caused it to happen.

The Workers' Compensation Act does not permit a suit for gross negligence unless that gross negligence resulted in the employee's death.[31]  Courts cannot expand the remedies afforded to an injured worker who receives workers' compensation benefits beyond that which the Legislature has afforded.[32]  We conclude, like the court of appeals, that the Lees cannot recover against Berkel based on the facts presented.

### III

The final question is whether the court of appeals erred in remanding this case in the interest of justice.  A court of appeals "must render the judgment that the trial court should have rendered, except when . . . the interests of justice require a remand for another trial."[33]  Because the rules grant the court of appeals the discretion to determine when the cause of justice is served by a

---

[30] *See Medina v. Zuniga*, 593 S.W.3d 238, 247–48 (Tex. 2019) (summarizing gross negligence as requiring an act or omission that objectively presents an extreme degree of risk as well as the actor's subjective conscious indifference to the safety or welfare of others); *see also* STATE BAR OF TEXAS, TEXAS CIVIL PATTERN JURY CHARGES PJC 4.2A (2018) ("'Gross negligence' means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to establish that the act or omission in question was the result of actual conscious indifference to the rights, welfare, or safety of the persons affected by it.").

[31] TEX. LAB. CODE § 408.001(b).

[32] *See Reed Tool*, 689 S.W.2d at 407 ("The continued effectiveness of the worker's compensation scheme depends on the continued ability to spread the risk" of losses arising from accidental injuries.).

[33] TEX. R. APP. P. 43.3.

remand, we will only reverse that determination when the court of appeals abuses its discretion—

that is, when it acts arbitrarily, unreasonably, or without reference to legal principles.[34]

The court of appeals remanded the case based on its adoption of a localized-area limitation

from the Third Restatement, a test that we rejected in *Mo-Vac*. The clarification of the law

justifying the court of appeals' remand thus no longer exists.[35] Acknowledging as much, the Lees

ask that we exercise our own discretion to remand in the interest of justice.[36] However, we have

no more basis to remand the case than the court of appeals.

First, Berkel proposed, and the Lees rejected, a definition of intent to injure consistent with

*Reed Tool* and reaffirmed in *Mo-Vac*. The Lees thus were on notice that their submission did not

reflect the existing definition of intent in the workers' compensation context because their

proposed definition did not ask whether a Berkel crew member knew with substantial certainty

that he would cause Lee's injury.[37] The Lees had sufficient opportunity to fully develop evidence

of Miller's knowledge that Lee, specifically, would be injured. The Lees knew Berkel's position

---

[34] *See, e.g.*, *In re Mahindra, USA Inc.*, 549 S.W.3d 541, 550 (Tex. 2018) ("The abuse of discretion standard is 'typically applied to procedural . . . determinations' and 'is especially appropriate when the trial court must weigh competing policy considerations and balance interests.'" (quoting *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000))); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004) ("The test for an abuse of discretion is . . . 'whether the court acted without reference to any guiding rules and principles,'" and a court's exercise of its discretion will not be reversed unless "it was arbitrary or unreasonable." (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985))); *cf. Sears, Roebuck & Co. v. Marquez*, 628 S.W.2d 772, 773 (Tex. 1982) (per curiam) (holding that the court of appeals abused its discretion in ordering remand in the interest of justice where the trial court's judgment was errorless).

[35] *See Berkel & Co. Contractors, Inc. v. Lee*, 543 S.W.3d 288, 308 (Tex. App.—Houston [14th Dist.] 2018).

[36] *See* TEX. R. APP. P. 60.3.

[37] In a post-submission letter, the Lees suggest that an opinion in *Harris County Flood Control District v. Kerr*, 499 S.W.3d 793 (Tex. 2016), that was later withdrawn shows uncertainty about a specificity requirement for the substantial-certainty test. That opinion issued after the trial in this case; the Lees did not rely on it in constructing the charge.

on the specific-victim requirement, based on established precedent. If the Lees had additional evidence regarding Miller's specific intent and knowledge, they had no incentive to withhold it.

Second, our holding in *Mo-Vac* did not change or clarify Texas law. The "most compelling case" for a remand in the interest of justice "is where we overrule existing precedents on which the losing party relied at trial."[38] The Lees contend that the court of appeals' opinion demonstrates that the law was not clear for submission of the case to the jury.[39] Unsuccessfully urging the expansion of existing law, however, does not create a lack of clarity. The Lees urged in the trial court that the localized-area limitation in the Third Restatement supported a jury charge that did not require a finding that a Berkel employee knew that he would injure Lee. But at the time of trial, no court—in Texas or elsewhere—had adopted that position. Though the Lees advocated for an expansion of Texas law in the trial court, the Lees did not rely on existing precedent that our Court later clarified or disavowed.

*Mo-Vac*'s holding that "the employer must believe that its actions are substantially certain to result in a particular injury to a particular employee, not merely highly likely to increase overall risks to employees in the workplace,"[40] reaffirms the holding in *Reed Tool* that "the intentional failure to furnish a safe place to work does not rise to the level of intentional-injury except when

---

[38] *Westgate, Ltd. v. State*, 843 S.W.2d 448, 455 (Tex. 1992) (compiling cases); *see also Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 162 (Tex. 2012) ("[W]e have remanded a case to the trial court when we have changed our precedent or when the applicable law has otherwise evolved between the time of trial and the disposition of the appeal."); *Boyles v. Kerr*, 855 S.W.2d 593, 603 (Tex. 1993) ("Remand is particularly appropriate where the losing party may have presented his or her case in reliance on controlling precedent that was subsequently overruled.").

[39] *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 841 (Tex. 2000) ("Because neither this Court nor any other appellate court had written about the proper submission of an undertaking claim at the time this case was tried, it is appropriate to remand this case in the interest of justice.").

[40] *Mo-Vac Serv. Co. v. Escobedo*, 603 S.W.3d 119, 130 (Tex. 2020).

the employer believes his conduct is substantially certain to cause the injury."[41]  As we said in *Reed Tool* and again in *Mo-Vac*, the determinative factor must be "not the gravity or depravity of the employer's conduct but rather the narrow issue of intentional versus accidental quality of the injury."[42]  The evidence adduced at trial confirms that the crane collapse was an accident—an avoidable, unjustifiable, and grossly negligent accident—falling short of "genuine intentional injury."[43]

*    *    *

Under the intentional-injury exception to the Workers' Compensation Act, the plaintiff must prove that the employer believed that its actions were substantially certain to injure the plaintiff.  The court of appeals correctly concluded that the evidence in this case does not show that a Berkel employee knew that he would cause a falling lead to injure Lee.  Because the definition of intentional injury in the workers' compensation context remains unchanged under Texas law, a remand in the interest of justice is not appropriate.  Accordingly, we affirm the court of appeals' judgment notwithstanding the verdict, reverse its remand in the interest of justice, and render judgment for Berkel.

_____<br>
Jane N. Bland<br>
Justice

OPINION DELIVERED:  November 20, 2020

---

[41] *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 407 (Tex. 1985).

[42] *Mo-Vac*, 603 S.W.3d at 126 (quoting *Reed Tool*, 386 S.W.2d at 407).

[43] *Id.* (quoting *Reed Tool*, 689 S.W.2d at 406).